IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-1603-05, PD-1604-05, PD-1605-05






ORIAN LEE SCOTT, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


LAMAR COUNTY





 Keasler, J., delivered the opinion for a unanimous Court.


O P I N I O N 



 Orian Lee Scott was convicted of nine offenses relating to his conduct involving three
teenage boys. Scott appealed, arguing that the consolidation of the offenses in each Count
Three, to which Scott had entered guilty pleas, with the offenses in each Count One and Two
was improper and affected his substantial rights. The court of appeals agreed. (1) We find that
the court of appeals erred in doing so and reverse its judgments as to Counts Two and Count
Three.Facts and Procedural History

 Orian Lee Scott hired three teenage boys to do various tasks around his home, which
included yard work, painting, and bathing his dogs. He paid the boys ten dollars per hour for
their work and also treated them to dinners and movies if they would get "'cleaned up'" before
going out. Several times during the months that they worked for Scott, the boys complied with
his requests to take showers in the curtainless shower in his guest bathroom, which Scott had
equipped with a hidden video camera. The boys often masturbated while showering, and were
unaware that Scott videotaped them. Scott kept video recordings of the boys in the shower. 

 Scott was charged with nine offenses in three indictments--one indictment for each of
the boys. Each indictment charged three separate, identical offenses: 

 Count One: inducing a sexual performance by a child by actual lewd
exhibition of the genitals or anus, or masturbation.

 

 Count Two: producing or promoting a sexual performance by a child.

 Count Three: possession of child pornography. 

 Before trial, the State timely filed a notice of its intent to consolidate Counts One, Two,
and Three. Scott objected and moved to sever Counts Three from the other two counts
pursuant to Section 3.04 of the Texas Penal Code. (2) The trial judge denied Scott's motion and
consolidated all of the counts.

 Scott pled guilty to Count Three in all three indictments. A jury convicted him of the
additional charges. For each of the Count One convictions, the jury sentenced him to twenty
years (for a total of sixty years); for each of the Count Two convictions, Scott received a ten-year sentence (for a total of thirty years); and for each of the Count Three convictions, he
received ten years. The trial judge ordered the sentences for each Count One to run
consecutively with the sentences for each Count Two. 

 Scott appealed the convictions arguing, among other things, that (1) the evidence was
legally insufficient to prove the "induce" element of the offenses charged in each Count One;
and (2) the consolidation of all the offenses charged was improper and affected his substantial
rights. (3)

 The court of appeals reversed and rendered judgments of acquittal on Scott's
convictions on each Count One, finding "the evidence legally insufficient to prove Scott
induced any of the boys to engage in sexual conduct." (4) The court also reversed and remanded
for a new trial on his convictions on each Count Two and reversed and remanded for a new
punishment trial on his convictions on each Count Three because "the trial court's refusal to
sever the trial of Counts Two from Counts Three, to which Scott had pled 'guilty,' was harmful
error--affecting the conviction on each Count Two and affecting the punishment on each
Count Three." (5)

 We granted both of the State's grounds for review:

 (1) Did the Court of Appeals err in its sufficiency-of-the-evidence analysis
by failing to consider each alternative theory of guilt alleged in the
indictment and considered by the jury?


 (2) Did the Court of Appeals utilize an improper standard of review in
connection with its harmless-error analysis?


Law and Analysis

 After reviewing the record, we dismiss the State's first ground for review as
improvidently granted. Therefore, the judgments of acquittal rendered by the court of appeals
as to each Count One stand. With regard to the State's second ground, we hold that the trial
judge's failure to sever the offenses did not affect Scott's substantial rights and was, therefore,
harmless. The court of appeals erred in reversing the convictions and remanding for new trials
on each Count Two and in remanding for new punishment hearings on each Count Three. 

 A trial judge's failure to grant a mandatory severance under Section 3.04 is subject to
a harm analysis, and the error is harmless if it did not adversely affect the defendant's
substantial rights. (6) "To judge the likelihood that harm occurred, appellate courts must consider
everything in the record including all the evidence admitted at trial, the closing arguments, and
. . . the jurors' comments during voir dire." (7)

 Section 3.04 provides: 

 (a) Whenever two or more offenses have been consolidated or joined for
trial under Section 3.02, the defendant shall have a right to a severance
of the offenses.

. . .

 (c) The right to severance under this section does not apply to a prosecution
for offenses described by Section 3.03(b)(2) unless the court
determines that the defendant or the state would be unfairly prejudiced
by a joinder of offenses, in which event the judge may order the offenses
to be tried separately or may order other relief as justice requires. (8)


 At the time of the offenses in this case, Section 3.03(b)(2) did not include possession
of child pornography (Counts Three). (9) So on Scott's timely request, the trial judge was
required to sever Counts Three from Counts One (inducing a sexual performance by a child)
and Two (producing or promoting a sexual performance by a child). 

 The State argues that the court of appeals erred in holding that Scott's substantial rights
were harmed by the trial judge's refusal to sever the counts. Because the conduct captured on
the videotapes that formed the basis of Scott's possession of child pornography offenses
(Counts Three) was the same conduct at issue in Counts One and Two, the circumstances
surrounding Scott's guilty plea to each Count Three would be admissible in a trial on the other
counts. The State asserts, therefore, that the record does not show that the error affected
Scott's substantial rights.

 Turning to the rationale of the court of appeals, the State maintains that the court likely
believed that the harm to Scott was that the jury's knowledge of his guilty pleas to each Count
Three influenced its verdicts on Counts One and Two by acting as an implicit confession, which
allegedly reduced the State's burden of proof. But the State argues that such a belief ignores
the overwhelming evidence of Scott's guilt with regard to Counts One and Two. 

 In opposition, Scott contends that Section 3.04 mandates that he had the right to sever
each Count Three from the other counts for trial on his timely motion, and he relies on our
decisions in Warmowski v. State (10) and Llamas v. State (11) for the proposition that the error in
denying his request for a severance was not harmless.

 In Llamas, we held that "the language in Warmowski indicating that severance error is
never subject to a harm analysis is disavowed." (12) Our decision in Cain v. State (13) following
Warmowski requires a court of appeals to conduct a harm analysis under Texas Rule of
Appellate Procedure 44.2(b). (14) We also recognized in Cain that "where the error involved
defies analysis by harmless error standards or the data is insufficient to conduct a meaningful
harmless error analysis, then the error will not be proved harmless beyond a reasonable doubt
. . . ." (15) But if the data that is required to conduct a harm analysis is missing, an appellate court
must still conduct a harm analysis and simply take the absence of data into consideration. (16)

 In Llamas, the trial judge overruled Llamas's objection to the State's consolidation of
his two offenses--possession of a motor vehicle with an altered vehicle identification number
and possession of cocaine. (17) The jury returned a not-guilty verdict on the possession of
cocaine charge and a guilty verdict on the charge of possession of a motor vehicle with an
altered vehicle identification number. (18) The court of appeals determined that the trial judge
erred by overruling Llamas's mandatory right to severance. (19) The appellate court held that,
under Cain, the error was not harmless because the record contained insufficient information
to measure harm. (20) 

 We disagreed that the record was insufficient to evaluate harm because everything in
the record, the evidence admitted at trial, counsels' arguments, and the jurors' comments
during voir dire, is data that a court can use in analyzing harm. (21) We examined the record,
which included statements by some venirepersons that they might be more likely to convict
Llamas on one charge if they believed he committed the other charge. (22) We also acknowledged
the court of appeals's point that "'evidence as to the cocaine charge was admitted in this trial
that would otherwise not be relevant to the possession of altered identifications numbers and
vice versa.'" (23) We explained the intent of the severance statute:

 The rule allowing severance rests upon two legitimate concerns: (1) that the jury
may convict a 'bad man' who deserves to be punished--not because he is guilty
of the crime charged but because of his prior or subsequent misdeeds; and (2)
that the jury will infer that because the accused committed other crimes, he
probably committed the crime charged. (24)


 Both concerns were implicated in Llamas, and given the specific facts of Llamas's case,
we determined that we could "not be sure that the error did not have a substantial or injurious
effect on the jury's verdict." (25)

 In Scott's case, the court of appeals relied in part on Llamas to find that the failure to
sever was harmful. But this case differs significantly from Llamas. Here, although Scott pled
guilty to the charge he moved to sever, evidence of the underlying conduct involved in his
guilty plea to each Count Three--the videotapes--would have been admissible in his trial for
Counts One and Two. The only difference, therefore, that a severance of Counts Three would
have made is that the jury would not have heard Scott's actual guilty plea to the possession
offense. But, under the particular facts of this case, his admission of guilt likely had only an
incremental effect, if any, on the jury's verdict. In a trial involving only Counts One and Two,
common sense compels the conclusion that the jury would have known that Scott possessed
the videotapes (i.e., that Scott was guilty of possession of child pornography) because it would
have been made clear that they were found in his possession.

 At Scott's trial, the record reflects that the State played clips of the videotapes for the
jury. An investigator for the Lamar County Sheriff's Office testified that the videotapes were
discovered in a locked safe located in the laundry room of Scott's house. The investigator also
testified that some of the videotapes found in Scott's home contained images of Scott himself. 
From this evidence, a jury exercising common sense would have deduced that Scott was guilty
of possessing child pornography, even if he had not been charged with that offense.

 This conclusion also refutes the court of appeals's argument regarding statements by
two venirepersons during voir dire. The court of appeals focused on "the comments made
during voir dire by defense counsel when the panel learned of Scott's plan to plead 'guilty' to
possession of child pornography:"

[DEFENSE COUNSEL]: Does anybody here had [sic] a son, daughter, grandson
or granddaughter that has been the victim of any type of sexual assault or sexual
abuse that might make you feel like you could not serve on this jury? What's
your number?


JUROR: 18.


[DEFENSE COUNSEL]: Could you tell me about that?


JUROR: Family members.


[DEFENSE COUNSEL]: Was that your son or daughter?


JUROR: Yes.


[DEFENSE COUNSEL]: The fact that that happened to you, are you going to
hold that against Mr. Scott?


JUROR: Well, I got to ask you a question.


[DEFENSE COUNSEL]: Yes, sir.


JUROR: You announced that he had possession of pornographic material.


[DEFENSE COUNSEL]: Yes, I did say that.


JUROR: And that could entice young kids into an act.


[DEFENSE COUNSEL]: You're right.


JUROR: So, it is extremely hard to be able to stay focused on it without hearing
all the facts. But that one statement was awful strong for the D.A. in my opinion.


[DEFENSE COUNSEL]: What number are you?


JUROR: 28.


 This exchange actually occurred ten pages after defense counsel's first reference to the
guilty plea, at a point in the voir dire during which the venirepersons were discussing their
willingness to give probation under certain circumstances. Defense counsel referred to the
guilty plea at the beginning of his voir dire: "Count 3 is possession of child pornography. We
are not going to dispute that. We are not going to say we didn't possess it or have it." But
again, this admission to possession of child pornography would have been a foregone
conclusion at a trial on Counts One and Two. 

 Additionally, Scott failed to contest much of the State's case against him at trial. All
three boys gave incriminating testimony against him, but Scott called only one witness--a
doctor who testified regarding his medical condition, his suicide gesture, eating habits, and
medication. The record shows no attempt by the defense to deny or explain the fact that Scott
videotaped the boys while they showered. Rather, the record demonstrates that Scott's main
trial strategy was to attempt to negate the element of "inducement" as it related to each Count
One. Finally, and most notably, Scott has made no allegation that his defensive strategy would
have been any different if the severance had been granted.

 Under the specific facts of this case where there is so much overlap in the evidence
used to support the charged offenses, we cannot say that Scott's substantial rights were
affected by the trial judge's failure to sever Count Three. We therefore hold that the court of
appeals erred in reversing the trial judge's judgment and remanding this case for a new trial on
Count Two and a new punishment trial on Count Three.

Conclusion

 We dismiss the State's first ground for review as improvidently granted. Accordingly,
the court of appeals's judgments reversing each Count One remain in place. We reverse the
judgments of the court of appeals pertaining to each Count Two and Three and affirm the trial
court's judgments as to each Count Two and Three.




DATE DELIVERED: September 26, 2007

PUBLISH
1. Scott v. State, 173 S.W.3d 856, 859 (Tex. App.--Texarkana 2005).
2. Tex. Penal Code Ann. § 3.04 (Vernon Supp. 2004-05).
3. Scott, 173 S.W.3d at 859.
4. Id.
5. Id.
6. Llamas v. State, 12 S.W.3d 469, 470 (Tex. Crim. App. 2000); see also Tex. R.
App. P. 44.2(b).
7. Llamas, 12 S.W.3d at 471.
8. Tex. Penal Code Ann. § 3.04.
9. Tex. Penal Code Ann. § 3.03(b)(2) (Vernon Supp. 2004-05).
10. 853 S.W.2d 575 (Tex. Crim. App. 1993).
11. 12 S.W.3d 469.
12. Id. at 470.
13. 947 S.W.2d 262, 264 (Tex. Crim. App. 1997).
14. Llamas, 12 S.W.3d at 470.
15. 947 S.W.2d at 264.
16. Llamas, 12 S.W.3d at 470 (citing Cain, 947 S.W.2d at 264).
17. Id. at 469.
18. Id. at 469-70.
19. Id. at 470.
20. Id. at 471.
21. Id.
22. Id. at 472.
23. Id. (quoting Llamas v. State, 991 S.W.2d 64, 69 (Tex. App.--Amarillo 1998)).
24. Id. at 471-72 (citing 2 Wayne R. LaFave, Israel & King, Criminal Procedure
Criminal Practice Series, 17.1(d) (2d ed. Supp. 1999)).
25. Id. at 472.