

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00009-CR

_____

BERNARD DALE KELLY, JR., Appellant

V.

The STATE OF TEXAS, Appellee

On Appeal from the 196th District Court
Hunt County, Texas
Trial Court No. 27407

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Bernard Dale Kelly, Jr., appeals his conviction for aggravated assault with a deadly weapon and sentence of twelve years' imprisonment. *See* TEX. PENAL CODE ANN. § 22.02 (West 2011). The three co-defendants—Kelly, Tyrone McCurdy, and S.A.P., Kelly's fifteen-year-old cousin—had left Sally Mae Perkins' house, retrieved some guns belonging to McCurdy, and were returning to Perkins' house when they passed another of Kelly's cousins, Treybbian Nelson. McCurdy demanded that Kelly, who was driving, pull over, and Kelly complied. McCurdy exited the car and shot Nelson. The three co-defendants left the scene, and Nelson eventually died.[1]

Kelly, indicted for murder, cooperated with the State and testified for the State at McCurdy's trial. The State and Kelly reached a negotiated plea bargain of five years' imprisonment. At the plea hearing, the State argued Kelly was less culpable than McCurdy, had cooperated with the prosecution of McCurdy, and had provided testimony which proved critical in securing McCurdy's conviction. The trial court, though, rejected the plea bargain noting that McCurdy received a fifty-year sentence.[2] The State, with the consent of the defense, attempted to amend the indictment to aggravated assault or proceed on a refiled indictment, but the trial court refused.

---

[1]Kelly states in his brief that Nelson died at the hospital. The record establishes that Nelson is dead and one police officer testified Nelson was murdered. We have not been directed to where there is evidence in the record that Nelson died at the hospital or that the gunshot wounds caused Nelson's death.

[2]Kelly alleges in his brief that S.A.P. will serve approximately four years, presumably, in the custody of the Texas Youth Commission. The parties have not directed us to where there is evidence in the record concerning this fact.

Kelly entered a plea of not guilty but entered a stipulation of evidence to aggravated assault.[3] The State announced in its opening statement and throughout the trial that it was only seeking a conviction for the lesser-included offense of aggravated assault. Throughout the proceedings, the trial court and the State antagonized each other.[4] The jury found Kelly guilty of aggravated assault. Before the trial court dismissed the jury, Kelly orally elected on the record to have the jury assess punishment and the State consented on the record. The trial court refused the change in election and dismissed the jury. The trial court assessed punishment at twelve years' imprisonment.

Kelly raises five issues on appeal. Kelly's first issue claims that his judicial confession to aggravated assault should have been treated as a guilty plea and that the trial court erred in not holding a unitary proceeding. In his second issue, Kelly claimed the trial court erred by rejecting Kelly's change in jury election pursuant to the State's consent. Kelly's third issue claims the trial court violated due process and committed fundamental error by failing to remain neutral. Kelly's last two issues challenge the sufficiency of the evidence to support attorney's fees and court costs.

---

[3]We note that Kelly did not admit in the stipulation of evidence that Nelson died.

[4]When the State told the jury at voir dire it would not be pursuing the murder charge, the trial court ordered the State to either proceed with its questioning or have a seat. The State, undaunted, proceeded with its argument, and the trial court ordered the State to "have a seat or have a seat with the deputies, those are your options." The trial court, outside the presence of the jury, warned the prosecutor that it had "duct tape" and would not tolerate any more outbursts. At trial, the trial court and the State continued to antagonize each other. Outside the presence of the jury, the trial court told the prosecutor "[I am] surprised you still have your law license" and accused the prosecutor of committing "prosecutorial misconduct." The prosecutor accused the trial court of conducting a "sham trial."

The State concedes the trial court committed reversible error by rejecting Kelly's change in jury election.[5]  Although entitled to great weight, a concession by the State on an issue of law does not bind this Court.  *Rhodes v. State*, 240 S.W.3d 882, 885 n.3 (Tex. Crim. App. 2007); *Rios v. State*, 122 S.W.3d 194, 199 (Tex. Crim. App. 2003) (per curiam); *see Jennings v. State*, 302 S.W.3d 306, 313 (Tex. Crim. App. 2010) (Keller, P.J., concurring).

We agree the trial court erred in not submitting punishment to the jury.  Article 37.07 of the Texas Code of Criminal Procedure provides, "If a finding of guilt is returned, the defendant may, with the consent of the attorney for the state, change his election of one who assesses the punishment."  TEX. CODE CRIM. PROC. ANN. art. 37.07, § 2(b) (West Supp. 2013).  The Texas Court of Criminal Appeals has held that the trial court must honor a post-verdict change in election consented to by the State.  *Evans v. State*, 542 S.W.2d 139, 142 (Tex. Crim. App. 1976).  The statute does not require the change to be in writing, and the change may be made orally on the record.  *Rushton v. State*, 695 S.W.2d 591, 595 (Tex. App.—Corpus Christi 1985, no pet.).  The trial court erred in refusing to submit punishment to the jury.

Although the State concedes the error is reversible, the State does not brief why this error is not subject to a harmless error analysis.  Because it is impossible to speculate what sentence would have been imposed by the jury, Kelly argues the error is structural error and not subject to a harmless error analysis.

---

[5]We note the State also concedes the trial court violated his duty of "neutrality."  We are not bound by the State's concessions, and it is not necessary for us to express any opinion concerning whether the trial judge failed to remain impartial.

In *Cain v. State*, the Texas Court of Criminal Appeals announced that "[e]xcept for certain federal constitutional errors labeled by the United States Supreme Court as 'structural,' no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis." *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (footnote omitted). The right to a trial by jury at punishment, while guaranteed by statute, is not a constitutional right. *See* TEX. CODE CRIM. PROC. ANN. § 37.07(2)(b); *Ivey v. State*, 277 S.W.3d 43, 46–47 (Tex. Crim. App. 2009); *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). The Texas Court of Criminal Appeals has repeatedly limited structural errors to federal constitutional errors labeled by the United States Supreme Court as "structural." *See, e.g.*, *Mercier v. State*, 322 S.W.3d 258, 263 (Tex. Crim. App. 2010); *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). Since there is no constitutional right to have a jury assess punishment, the violation of Article 37.07, Section (2)(b) cannot be a structural error.

Although this error is not structural error, we agree with Kelly that it is impossible to speculate what sentence would have been imposed by the jury. In such circumstances, the Texas Court of Criminal Appeals has instructed that we are to conduct a harmless error analysis, but since the error defies analysis, the result of the harmless error analysis is that the error is reversible. *Cain* specifically noted that some errors will never be or will rarely be harmless. *Cain*, 947 S.W.2d at 264. The Texas Court of Criminal Appeals reasoned that "where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless." *Id*. While these

5

errors are not immune from a harm analysis, the lack of data required to conduct a harm analysis must be considered when the appellate court conducts the harm analysis. *Scott v. State*, 235 S.W.3d 255, 258–59 (Tex. Crim. App. 2007); *Cain*, 947 S.W.2d at 264. "[S]ome errors will not be proven harmless because harm can never be determined due to the lack of data needed for analysis." *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000).

In conducting a harmless error analysis, we apply the standards for nonconstitutional error contained in Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *Smith v. State*, 355 S.W.3d 138, 152 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). We must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Harm has not occurred if the appellate court, after examining the record as a whole, "has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

The punishment assessed was greater than the minimum punishment and greater than the punishment asked for by the State and the victim's family. The State only asked for five years' imprisonment, and the victim's mother only asked for four years. Kelly was only twenty-two years old and lacked a criminal history. This case contains some evidence that a jury might assess a shorter term of imprisonment. Further, this is a case where the error defies harm

analysis. The error—the failure to submit punishment to a jury—affects the framework of the trial in a manner similar to a structural error. *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (stating structural error is "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself"). One decision maker has been substituted for another decision maker, changing the entire framework of the trial. It is impossible to speculate what sentence would have been imposed by the jury. Considering the evidence in the record and taking the absence of data into account, we are unable to conclude the error did not result in harm.

The trial court erred in refusing Kelly's election, with the consent of the State, to have the jury assess punishment. Since we are unable to conclude this error did not result in harm, Kelly is entitled to a new trial on punishment. Because this issue grants the greatest relief requested by Kelly—a new trial on punishment—it is not necessary to address Kelly's remaining issues.

We reverse the judgment of the trial court and remand for a new trial on punishment.

Bailey C. Moseley
Justice

Date Submitted:     November 27, 2013
Date Decided:       December 4, 2013

Do Not Publish