**Affirmed and Memorandum Opinion filed January 14, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00523-CR

---

**KENNETH LYNN SCHROEDER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 10th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 10CR2872**

---

## MEMORANDUM OPINION

Kenneth Lynn Schroeder appeals his felony conviction for driving while intoxicated, challenging the sufficiency of the evidence to support his conviction and asserting he received ineffective assistance of counsel at trial. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Schroeder was charged by indictment with an offense of driving while intoxicated, a felony. As reflected in the indictment, the State alleged two prior

convictions for the same offense for jurisdictional purposes and two more felony convictions for the same offense for enhancement purposes. Schroeder pleaded "not guilty" to the charge.

At trial, a number of witnesses were called by the State, including the officer who stopped Schroeder's vehicle and arrested Schroeder. Schroeder's blood sample, taken after he was in custody, indicated the presence of three medications in Schroeder's system. Defense counsel called a pharmacist to testify, who stated that the levels of medications, as reflected in the blood sample, were within or below therapeutic range. A mental-health peace officer testified that other conditions could affect a person so that the person would appear to be intoxicated. A jury found Schroeder guilty of the charged offense and sentenced him to twenty-five years' confinement.

Schroeder retained new counsel and appealed his conviction to this court. Upon Schroeder's motion, this court abated and remanded the case to the trial court so that Schroeder could file a motion for new trial, request a hearing on that motion, and develop a claim for ineffective assistance of counsel at trial. In the trial court, Schroeder filed a motion for new trial, asserting ineffective assistance of counsel at trial. The trial court conducted a hearing on Schroeder's motion and denied the motion. Now that the appeal has been reinstated, we consider Schroeder's two issues challenging the sufficiency of the evidence and asserting that he received ineffective assistance of counsel.

## ISSUES AND ANALYSIS

**Is the evidence sufficient to support a conviction for driving while intoxicated?**

In his first issue, Schroeder asserts the evidence is insufficient to support his conviction. In a sufficiency review, we view all the evidence in the light most

favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime or other matter beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Brooks v. State*, 323 S.W.3d 893, 894–95 (Tex. Crim. App. 2010) (plurality op.). The jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in the evidence fairly, and we draw all reasonable inferences from the evidence in favor of the verdict. *Id.* An appellate court may not re-evaluate the weight and credibility of the evidence produced at trial because doing so improperly substitutes the court's judgment for that of the fact finder. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012).

The indictment alleged Schroeder was intoxicated by reason of introducing a combination of alcohol, a controlled substance, a drug, or a dangerous drug into the body, which was a third such offense charged against Schroeder. A person commits the offense of driving while intoxicated if that person is intoxicated while operating a motor vehicle in a public place. *See* Tex. Penal Code § 49.04(a). The term "intoxicated" means (1) not having the normal use of mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of those substances, or any substance into the body, or (2) having an alcohol concentration of 0.08 or more. *Id.* § 49.01(2)(A)–(B). Driving while intoxicated is a third-degree felony if it is shown at trial that a defendant previously has been convicted "two times of any other offense relating to the operating of a motor vehicle while intoxicated . . . ." *See id.* § 49.09(b)(2). A conviction for the offense of driving while intoxicated may be supported by direct or circumstantial evidence. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

3

Schroeder does not contest that he was operating a motor vehicle on a public roadway. The State also alleged two prior convictions for driving while intoxicated for jurisdictional purposes and two more felony convictions for driving while intoxicated as enhancements. Schroeder does not contest the sufficiency of the evidence of the prior convictions.

The record reflects that an officer stopped Schroeder's vehicle for speeding. After the officer initiated the traffic stop by activating his emergency lights, the officer observed Schroeder's vehicle swerve to the shoulder of the road and weave within the lane. The officer testified that Schroeder exhibited slurred speech, difficulty and slowness in answering the officer's questions, and was slow and methodical in exiting the vehicle. In his encounter with Schroeder, the officer observed Schroeder had a blank stare and red, glassy eyes. The officer testified that he detected the light odor of alcohol on Schroeder's breath. According to the officer, Schroeder exhibited signs of intoxication. Schroeder admitted to the officer that he had taken a prescribed medication, "Somas," a muscle relaxer.

The officer conducted several standard field-sobriety tests and three non-standard field-sobriety tests. Schroeder demonstrated signs of intoxication in performing the horizontal-gaze nystagmus ("HGN") test. Schroeder demonstrated signs of intoxication when he performed poorly on a walk-and-turn test, losing his balance. The officer opined that Schroeder performed well on a one-leg-stand test. Schroeder also performed several other tests, including a test to recite the alphabet, in which Schroeder failed to follow the officer's directions for the test several times. Based on the physical signs Schroeder exhibited and Schroeder's performance in the field-sobriety tests, the officer believed Schroeder was intoxicated and placed Schroeder under arrest. A video of the stop recorded from the officer's vehicle was admitted into evidence. An officer's testimony, alone,

4

may provide sufficient evidence to establish the element of intoxication. *See Cotton v. State*, 686 S.W.2d 140, 142–43 (Tex. Crim. App. 1985) (providing that experienced arresting officer's testimony that a driver was intoxicated, when based on observations of slurred speech, bloodshot eyes, unsteady balance or staggered gait, was sufficient to establish intoxication); *Henderson v. State*, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("The testimony of a police officer that an individual is intoxicated is probative evidence of intoxication.").

Schroeder's blood was drawn at a local hospital. The results from the blood sample indicated concentrations of three medications: 26 milligrams of a muscle relaxer, meprobamate, per Liter; 8.5 milligrams of an anti-anxiety medication, carisoprodol, per Liter; and .03 milligrams of a painkiller, hydrocodone, per Liter. The blood sample did not reflect the presence of alcohol in Schroeder's system. According to expert testimony presented by the State, the levels of medications were at or higher than recommended therapeutic dosages. The expert opined that the medications, at the levels reflected in Schroeder's blood sample, are consistent with literature from the National Highway Traffic Safety Administration showing intoxication. The expert testified that a combination of the same medications increases the effects of those medications on a person's body.

Contrary to evidence presented by the State, a pharmacist called by the defense testified that the levels of two medications in Schroeder's blood sample were either low or below therapeutic range. The pharmacist testified that the level for a third medication was at the high end of maximum therapeutic range. Nevertheless, the State's expert testified that the three medications in Schroeder's system, when combined even at lower levels of therapeutic dosages, could cause impairment. *See Paschall v. State*, 285 S.W.3d 166, 177–78 (Tex. App.—Fort Worth 2009, pet. ref'd) (involving circumstantial evidence that a combination of

5

medications could cause signs of intoxication such as slurred speech, affected balance, abnormal gait, and constricted pupils, and the evidence was sufficient to support "intoxication" by reason of introduction of controlled substances into an accused's body). The evidence is not insufficient when a finder of fact resolves conflicting evidence in favor of the prevailing party.[1] *See Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Additionally, the pharmacist testified that one of the medications is usually accompanied by written warning to avoid operating a motor vehicle while taking the medication. Although Schroeder presented evidence that other conditions, such as dehydration, could have caused physical signs and symptoms that could appear to be signs of intoxication, the State presented evidence that on the night Schroeder was booked in the county jail, Schroeder presented no medical signs of dehydration. *See id.* at 109 (concluding that jury reasonably could have placed greater weight in the testimony of State's witnesses when considering whether other conditions could have explained the physical signs observed by arresting officer). The record also reflects that dehydration is not an ongoing condition, but, rather, it can be easily and quickly remedied by consuming fluids. The jury was entitled to place greater weight on the testimony of those who encountered Schroeder on the night of the offense. *See id.*

Given the officer's description of Schroeder's demeanor, physical signs, and performance on the field sobriety tests, along with evidence that Schroeder had taken medication and expert testimony that a combination of the same medications could affect a person's use of mental and physical faculties, the jury had both

---

[1] Schroeder relies on a case, *Redwine v. State*, 305 S.W.3d 360 (Tex. App.—Houston [14th Dist.] 2010, pet ref'd), in which a key witness testified to a greater than reasonable doubt as to the essential facts. Schroeder's reliance on *Redwine* is misplaced because no witness in the case at hand expressed any equivocation.

direct and circumstantial evidence that Schroeder did not have the normal use of his mental and physical faculties by introduction of one or more substances into his body. *See* Tex. Penal Code Ann. § 49.01(2)(A); *Paschall*, 285 S.W.3d at 177–78 (concluding that evidence was sufficient to support a conviction for driving while intoxicated based on evidence that accused had consumed two medications, officer's testimony of accused's performance on field-sobriety tests, and pharmacist's testimony that the combination of medications could cause a person intoxicated by use of the drugs to exhibit symptoms consistent with intoxication). Viewing the evidence in the light most favorable to the trial court's judgment, we conclude a factfinder reasonably could have found the essential elements of a third-time offense for driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04; *Paschall*, 285 S.W.3d at 177–78. We overrule Schroeder's first issue.

**Did Schroeder receive ineffective assistance of counsel?**

In his second issue, Schroeder asserts he received ineffective assistance of counsel at trial, warranting a new trial. Schroeder raised his ineffective assistance claim in his motion for new trial on abatement, and the trial court denied the motion. We review a trial court's ruling on a motion for new trial under an abuse-of-discretion standard. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004, superseded by rule on other grounds). When, as in this case, the motion for new trial alleges ineffective assistance of counsel, we must determine whether the trial court's determination of the ineffective-assistance claim and denial of the motion for new trial were clearly wrong and outside the zone of reasonable disagreement. *Anderson v. State*, 193 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

To be entitled to a new trial based on a claim for ineffective assistance of counsel, Schroeder must show that (1) counsel's performance was so deficient that

7

he was not functioning as acceptable counsel under the Sixth Amendment, and (2) there is a reasonable probability that, but for counsel's error or omission, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). A defendant is not entitled to perfect or errorless counsel, however. *Bridge v. State*, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). There is a strong presumption that an attorney's conduct fell within the wide range of reasonable professional assistance and was motivated by sound trial strategy. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). The defendant must prove ineffective assistance of counsel by a preponderance of the evidence to overcome this presumption. *Thompson*, 9 S.W.3d at 813. A showing of deficient performance must affirmatively appear in the record. *Id.*

In his motion for new trial, Schroeder asserted the following as grounds for ineffective assistance of counsel at trial:

- Counsel failed to timely file a motion for new trial;
- Counsel failed to follow a previously agreed trial strategy by hiring an appropriate expert;
- Counsel misrepresented to Schroeder that an appropriate expert had been hired;
- The pharmacist who was called by counsel to testify was an inappropriate and under-qualified expert, and counsel failed to inform Schroeder that the pharmacist was a client of counsel's in a pending civil matter;
- Counsel's advice about an offer for a plea agreement with the State induced Schroeder to reject the offer because Schroeder relied on counsel's false assurances that a pharmacologist had been employed;
- Counsel engaged in a financial conflict of interest by charging trial preparation fees and charging a fee for $9,500 for an expert who had not been hired; and

8

- Counsel delayed in withdrawing as counsel of record, which prevented Schroeder from timely filing a motion for new trial.

*Alleged failure to call appropriate experts*

At the hearing on Schroeder's motion for new trial, a pharmacist Robert Kay testified that he had been designated as an expert in the case and had received a subpoena to testify. Ultimately, he did not testify in the case and never discussed the case, or any fees, with trial counsel. According to trial counsel, it is not uncommon to list witnesses as experts and not call them to testify. Trial counsel testified that Kay shared the same credentials as the pharmacist who testified at trial and that Kay's testimony, likewise, would have been the same or similar. A trial counsel does not render ineffective assistance of counsel if an expert's testimony would be cumulative of testimony already offered. *Ex parte Jimenez*, 364 S.W.3d 866, 888 (Tex. Crim. App. 2012).

The pharmacist who testified at trial stated he had been a pharmacist for twenty-five years. According to the pharmacist, at the time of his testimony, he was a client represented by trial counsel in a pending civil matter involving a ring. He did not receive a fee in exchange for his expert testimony in Schroeder's case and did not received any reduction in fees for counsel's representation in the civil matter. He had not testified in other prior matters for trial counsel. In preparation for his testimony in Schroeder's case, he conducted what he characterized as minimal preparation, met several times with trial counsel, reviewed Schroeder's toxicology report, researched several hours, and discussed his testimony with trial counsel. In his testimony about therapeutic dosage levels, he relied on his training and experience as a pharmacist. Overall, the expert's testimony generally supported Schroeder's case. The pharmacist was competent to testify to the levels of medications found in a person's body and how those medications could affect a

person or make a person appear to be intoxicated. *See id.* at 885 (concluding that calling an expert to testify whose opinion was grounded in scientific and medical bases and generally supported an accused's case was not ineffective assistance of counsel). To the extent that Schroeder characterizes the pharmacist's one answer, "not always," in response to a question whether he would expect somebody to appear intoxicated on the levels that are shown in Schroeder's blood test as unhelpful to his defense, trial counsel's conduct in calling that witness to testify would not amount to ineffective assistance. *See id.* (declining to conclude trial counsel rendered ineffective assistance when an expert unexpectedly made a profane outburst). In light of the pharmacist's testimony, grounded in his training and experience, trial counsel was not ineffective for calling the pharmacist to testify. *See id.*

Trial counsel testified that he did not investigate a pharmacologist. According to trial counsel, a pharmacologist would have added nothing to the case when the procedures for drawing Schroeder's blood were not problematic. Counsel testified that when the undisputed evidence showed the presence and amount of medications in Schroeder's body, the only question in trial counsel's mind was the physiological effect of those medications on the human body and a pharmacist could have described the effect of the exact medications relevant in this case. Although Schroeder believed that trial counsel would hire a "scientist" or a "Ph.D." as an expert, trial counsel stated that he had discussed with Schroeder calling a mental-health law enforcement officer and a pharmacist, both of whom testified at trial.

Although Schroeder argued that a pharmacologist would have been an appropriate expert and that trial counsel failed to investigate whether a pharmacologist could help the defense, the record does not demonstrate what such

10

an investigation would have revealed or how the testimony would have differed from the pharmacist's testimony or how such an expert would have aided counsel's cross-examination of the State's witnesses, his trial preparation, or his presentation of Schroeder's defense. *See id.* Therefore, Schroeder has not shown that there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's alleged failure to investigate the testimony of a pharmacologist. *See id.* (providing that accused failed to show that the failure to have additional experts created a high risk of an inaccurate verdict). Likewise, to the extent Schroeder asserts that he relied on trial counsel's assurances of "appropriate" expert testimony when he rejected the State's plea-agreement offer, and that that the result of the proceedings would have differed if a different expert had testified, Schroeder has failed to affirmatively show in the appellate record how the outcome of the proceedings would have differed when he has not shown how a different expert would have testified. *See id.*

### *Unsuccessful Trial Strategy*

In considering Schroeder's assertions in his motion for new trial that trial counsel (1) failed to timely withdraw as counsel of record to allow Schroeder to file a motion for new trial and (2) failed to file a motion for new trial, the record at the hearing on the motion reflects the parties' agreement and the trial court's ruling that the two issues were moot and not necessary to address. Because the record does not contain any evidence of trial counsel's reasons for not timely withdrawing or filing a motion for new trial, we would be required to speculate to assume this conduct was not a strategic decision. *See Landers v. State*, 110 S.W.3d 617, 624 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Accordingly, Schroeder had not satisfied either requirement of *Strickland* to prevail on his claim of ineffective assistance of counsel. *See id.*

11

Schroeder also asserts he rejected an offer for a plea agreement with the State and relied on trial counsel's assurances of an expert's testimony in support of the merits of a defensive trial strategy of dehydration. An error in trial strategy will be considered inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980); *Wright v. State*, 223 S.W.3d 36, 43 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

According to the record, the defensive strategy of dehydration was a novel approach, and trial counsel found no case law suggesting it was a successful defensive strategy. Trial counsel explained that trial strategy will vary for each driving-while-intoxicated case. Trial counsel stated that dehydration was a medical condition that affected a person's normal use of mental and physical faculties, which was essential to proving an intoxication charge. He prepared for the defense by reading to understand and develop the defense. Trial counsel sought to enter into evidence Schroeder's medical records reflecting that Schroeder had been medically diagnosed as dehydrated a short time before the charged offense occurred. He also called a mental health peace officer to testify that physical signs and behavior that would appear to be intoxication to most law enforcement officers could be caused by other conditions familiar only to those officers with training and experience in mental health. The mental health peace officer's testimony was intended by trial counsel to support the dehydration defense. According to trial counsel, finding a peace officer to testify for a defense team is difficult. *See Ex parte Jimenez*, 364 S.W.3d at 884. Trial counsel believed that the pharmacist's testimony was helpful to show that the amount of medications in Schroeder's system were considered low therapeutic dosages. Trial counsel had objected to the admission of Schroeder's pharmacy records into

12

evidence, but withdrew the objection at Schroeder's request; trial counsel believed the sheer volume and frequency of Schroeder's refills for medications hurt Schroeder's case.

Although he could not guarantee any trial results, trial counsel explained to Schroeder that a theory of dehydration could be successful with a jury. The defense of dehydration was the only defense he discussed with Schroeder and the only defense he believed to be available to Schroeder. The record indicates trial counsel, through the defensive theory of dehydration and expert testimony, was trying to negate an essential element of the State's case—the loss of normal use of mental and physical faculties—a common and effective strategy in criminal cases. *See*, *e.g.*, *Juarez v. State*, 308 S.W.3d 398, 403 (Tex. Crim. App. 2010); *Scott v. State*, 235 S.W.3d 255, 260–61 (Tex. Crim. App. 2007). Trial counsel was not ineffective for focusing upon the primary contested issue, intoxication. *See Ex parte Jimenez*, 364 S.W.3d at 884.

Finally, Schroeder complains that trial counsel improperly prolonged the case in the interest of garnering additional fees. Trial counsel testified that Schroeder asked to delay the case. Trial counsel acknowledged he had successfully implemented that strategy in the past and believed that it helped Schroeder in this case when a second charge[2] relating to the case at hand was dismissed by the State. An error in trial strategy will be deemed inadequate representation only if counsel's actions lacked any plausible basis. *See Ex parte Burns*, 601 S.W.2d at 372. Given counsel's reasons and the success of his strategy in Schroeder's case, we cannot conclude the trial strategy lacked plausible

---

[2] The record is unclear, but it suggests that Schroeder had two pending charges for driving while intoxicated in Galveston County, both stemming from the same incident, and that Schroeder was facing 25 to 99 years for each charge. The record suggests that one of these charges was tried in the underlying trial and that the State did not pursue the other charge.

basis.  *See id.*

*Alleged conflicts of interest*

The crux of Schroeder's ineffective-assistance claim and his appellate contentions is grounded in an assertion that trial counsel engaged in a conflict of interest by representing Schroeder.  For support, he points to evidence that trial counsel received a check in the amount of $9,500 from an individual Schroeder designated as attorney-in-fact in a power of attorney, which was apparently intended by Schroeder and his attorney-in-fact to be used for hiring an expert.  Schroeder also points to another check written from Schroeder's account to a person named Jimmy Roberts.  Schroeder refers to both the pharmacist and Roberts, who had been clients of trial counsel's, as supporting trial counsel's conflict of interest.

The record reflects that trial counsel introduced Schroeder to Roberts, who loaned Schroeder money for paying trial counsel's attorney's fees in Schroeder's case.  The check written to Roberts, who was also a client of trial counsel's in civil matters, was intended by Schroeder and his attorney-in-fact to prevent Roberts from foreclosing on Schroeder's home.

Trial counsel asserted that the check for $9,500 was intended by him to be a fee for trial preparation.  Even though Schroeder had written on the memo line of the check the word "expert," trial counsel did not intend for the money to be spent on experts; the record reflects that no experts were paid for their testimony.  Contrary to Schroeder's testimony and Schroeder's attorney-in-fact's testimony, trial counsel asserted that he did not tell Schroeder or the attorney-in-fact that he planned to employ an expert.

Regarding his connection with Roberts, trial counsel testified that he

14

informed Schroeder that he could not get involved in any dispute Schroeder might have with Roberts. Trial counsel did not advise Roberts about collecting the debt from Schroeder. Additionally, contrary to Schroeder's testimony, trial counsel testified that Schroeder knew the pharmacist who testified at trial and Roberts were clients of counsel's in civil matters.

Although *Strickland* governs claims of ineffective assistance of counsel based on attorney error, certain claims of ineffective assistance of counsel involving conflicts of interest are controlled by *Cuyler v. Sullivan. See Cuyler v. Sullivan*, 446 U.S. 335 (1980). Under *Cuyler*, an accused demonstrates a violation of his right to reasonably effective assistance of counsel based on a conflict of interest if he can show that (1) his counsel was burdened by an actual conflict of interest; and (2) the conflict had an adverse effect on specific instances of counsel's performance. *Cuyler*, 446 U.S. at 348–50. Until a defendant shows his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. *Id.* at 350. A showing of the "possibility of a conflict of interest" is not sufficient to overturn a criminal conviction. *See id.* But, if Schroeder shows an actual conflict, prejudice is presumed. *Id.* An actual conflict of interest exists if counsel is required to make a choice between advancing a client's interest in a fair trial or advancing other interests to the detriment of a client's interests. *See Monreal v. State*, 947 S.W.2d 559, 564 (Tex. Crim. App. 1997). The conflict, however, must be more than merely speculative. *James v. State*, 763 S.W.2d 776, 778–79 (Tex. Crim. App. 1989).

Evidence that trial counsel demanded more money for trial does not show an actual conflict of interest. Additionally, whether trial counsel represented Roberts or the pharmacist, the record reflects those matters were civil matters completely

15

unrelated to Schroeder's case.  There is no evidence that his representation of those clients in unrelated civil matters impaired his representation of Schroeder in a criminal proceeding.  *See Charleston v. State*, 33 S.W.3d 96, 101 (Tex. App.— Texarkana 2000, pet ref'd) (involving an alleged conflict in interest when appointed trial counsel had previously represented a State's witness's husband in unrelated matters several years before).  Consequently, Schroeder has not shown an actual conflict of interest.  *See id.*

Even if we were to indulge Schroeder's arguments and presume, without deciding, that these complaints satisfied a showing of an actual conflict of interest in that trial counsel made a choice to advance his own interests over advancing Schroeder's interest in a fair trial, Schroeder has not satisfied the second requirement that the conflicts had an adverse effect on specific instances of counsel's performance.  No testimony was developed at the new-trial hearing to show that accepting the money or trial counsel's past client representations had anything to do with his trial strategy of Schroeder's case or that these matters affected trial counsel's pecuniary interest in the outcome of the case.  *See Costilla v. State*, 84 S.W.3d 361,365–66 (Tex. App.—Beaumont 2002), *aff'd*, 146 S.W.3d 213 (Tex. Crim. App. 2004); *Fulgium v. State*, 4 S.W.3d 107, 115 (Tex. App.— Waco 1999, pet. ref'd) (declining to imply conflict to support an ineffective assistance claim based on prior representation).

Schroeder has failed to prove by a preponderance of the evidence that his trial counsel rendered ineffective assistance at trial, and the trial court did not err in denying his motion for new trial, which was based solely on Schroeder's ineffective-assistance claims.  *See Strickland*, 466 U.S. at 669, 104 S. Ct. 2055.  Accordingly, we overrule Schroeder's second issue.

The trial court's judgment is affirmed.


/s/     Rebecca Simmons
        Justice


Panel consists of Justices McCally, Busby, and Simmons.[*]

Do Not Publish — TEX. R. APP. P. 47.2(b).

---

[*] Senior Justice Rebecca Simmons sitting by assignment.