**Opinion issued September 4, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

## NO. 01-13-00300-CR

———————————————

**ARNOLDO VARA TORRES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 183rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1317308**

## MEMORANDUM OPINION

A jury convicted appellant, Arnoldo Vara Torres, of murder,[1] acquitted him

of aggravated assault with a deadly weapon,[2] and assessed his punishment at 30

---

[1]    *See* TEX. PENAL CODE ANN. § 19.02 (Vernon 2011).
[2]    *See* TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 2011).

years' confinement.  In his sole issue on appeal, appellant contends the trial court erred in consolidating the two indictments for trial over his objection.  We affirm.

## BACKGROUND

On August 7, 2011, Rachel Ruiz Soto took her 8-year-old son, J.C., to a birthday party at an apartment complex in Houston.  Rachel, J.C., and his siblings had previously lived at the complex for a short period of time before moving to Louisiana.  When they lived there, they resided in apartment 39 with Robert Juarez, who was confined to a wheelchair.  Rachel had been briefly involved with Robert's nephew, Reece Gonzalez.  Rachel also had friends, Chaparro and Guerro, who lived in apartment 5.  Appellant often "hung out" with Chaparro and Guerra at their apartment.

On the day of the party, J.C. played on a waterslide outside before going to Chaparro's and Guerra's apartment to change clothes.  He then went back outside to watch his friends play on the waterslide for a while.  J.C. decided that he wanted to buy some cookies from a lady selling baked goods at the complex, so he went in search of Rachel.  J.C. thought that his mother might have gone to apartment 39 to visit Robert, so he went there.  He did not find his mother, but when he looked in the window, he saw appellant standing behind Robert and holding a knife to Robert's throat.  He also saw Guerro stabbing Robert's nephew, Reece, while

2

Chaparro stood nearby laughing. Reece tried to fight back by hitting Guerro in the head with a statue.

Appellant, Chaparro, and Guerro left the apartment. While Chaparro and Guerro headed to the parking lot, appellant went to apartment 5, grabbed his keys, and the three men left the complex. The man throwing the birthday party, Leonel Guzman, saw the men leave apartment 39 and noticed that Guerro's head was bleeding. In the meantime, a scared J.C. returned to the waterslide and pretended that he was playing so the men would not know that he had seen what happened.

Reece also fled the apartment and tried to get to his car, but he soon collapsed outside and died of multiple stab wounds. J.C. ran to Reece and comforted him as he lay dying.

Rachel and Guzman went to apartment 39 to try and figure out what had happened. Robert, who was still inside the apartment, would not talk to Guzman, but allowed Rachel to enter. Rachel saw blood all over the place and asked Robert why he did not help Reece. Robert replied that appellant held a knife to his throat.

Rachel gave a statement to police before returning with her family to her home in Louisiana. While driving home, J.C. told his mother what he had seen. Rachel called the Houston police to tell them what her son knew, and officers came to interview J.C.

Appellant was indicted for the murder of Reece and the aggravated assault of Robert. The State moved to consolidate the charges into a single trial and to have any sentences imposed run consecutively. The trial court granted the motion. Before trial, appellant's counsel objected to joining the cases for trial. The trial court overruled the motion, and the cases proceeded to trial. The jury found appellant guilty of Reece's murder, but acquitted him of Robert's aggravated assault. This appeal followed.

## SEVERANCE

In his sole issue on appeal, appellant contends the trial court erred in denying his severance request pursuant to Section 3.04 of the Penal Code, which provides that "[w]henever two or more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall have a right to a severance of the offenses." TEX. PENAL CODE ANN. § 3.04 (Vernon 2011).[3]

*Standard of Review and Applicable Law*

We review the decision of a trial court to grant or deny a severance request, based upon a statute, for an abuse of discretion. *Salazar v. State*, 127 S.W.3d 355, 365 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Section 3.04(a) grants defendants an absolute right to sever consolidated charges, except those excluded

---

[3] The severance statute also contains exceptions for several enumerated offenses that are not applicable here. *See* TEX. PENAL CODE ANN. §§ 3.04(c), 303(b) (Vernon 2011).

4

by 3.04(c), and the trial court does not have discretion to deny such a motion. *Werner v. State*, 412 S.W.3d 542, 546–47 (Tex. Crim. App. 2013). If the trial court erroneously denies a severance motion, we review the error for nonconstititional harm. *Id.* at 547. We assess harm after reviewing the entirety of the record, including the evidence, jury charge, closing arguments, voir dire, and any other relevant information. *Id.* If the error did not adversely affect the defendant's substantial rights, then it is harmless. TEX. R. APP. P. 44.2(b); *Werner,* 412 S.W.3d at 547 (holding severance error harmless when significant overlap of evidence and evidence of guilt overwhelming); *Scott v. State,* 235 S.W.3d 255, 257 (Tex. Crim. App. 2007) (error harmless when significant overlap of evidence).

*Analysis*

The State concedes the trial court erred in denying appellant's severance motion, but contends that the error was harmless. We agree.

In *Llamas v. State*, the trial court erroneously consolidated a drug charge with a motor vehicle charge. 12 S.W.3d at 470. When the defendant was arrested on the motor vehicle charge, officers searched his truck and discovered cocaine. *Llamas v. State*, 991 S.W.2d 64, 66 (Tex. App.—Amarillo 1998), *aff'd*, 12 S.W.3d 469 (Tex. Crim. App. 2000). The court of criminal appeals held that the erroneous denial of the appellant's motion to sever was harmful because, but for the erroneous consolidated proceeding, the jury would not have heard any evidence

5

about the drugs and might well have convicted the defendant, not because the State proved the elements beyond a reasonable doubt, but because the defendant was a "bad man" who committed other crime and therefore probably committed the motor-vehicle offense also. *Llamas*, 12 S.W.3d at 472.

By contrast, in *Scott v. State*, 235 S.W.3d 255 (Tex. Crim. App. 2007), the defendant was charged with three similar, but distinct crimes: inducing sexual performance by a child, producing or promoting a sexual performance by a child, and possession of child pornography. *Id.* at 256. The court held that because "there [was] so much overlap in the evidence used to support" all three charges, the defendant suffered no harm from having the charges tried together. *Id.* at 259–61. The court also noted that the defendant did not show how his defensive strategy might have been different had the charges had been severed. *Id.* at 261.

Finally, in *Werner v. State*, the trial court erroneously denied the appellant's motion to sever two stalking offenses. 412 S.W.3d at 547. However, distinguishing *Lamas*, the court held that the error was harmless because "[h]ad the two stalking charges been tried separately, evidence of the underlying conduct in the April [stalking] incident would have been admissible at the trial concerning the July stalking incident." *Id*. at 549. The *Werner* court described the most important consideration in determining harm to be the potential overlap of the evidence:

> When there is no overlap of evidence between the two charges, as in *Llamas*, the failure to sever is most likely to be harmful. When there

6

is a substantial overlap of evidence between the two charges, as in *Scott*, the failure to sever is most likely to be harmless. Although the entire record must be examined, the overlap of evidence is the most important factor under *Llamas* and *Scott*.

*Id.* at 548–49.

Here, the same evidence would have been admissible even if both the aggravated assault and the murder case had been tried separately. Same transaction contextual evidence is evidence of other offenses connected with the offense charged and, as such, is admissible as an exception under TEX. R. EVID. 404(b) when the evidence is necessary to the jury's understanding of the charged offense. *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993). J.C.'s testimony about what he saw through the window would not have been complete without his description of appellant restraining Robert with a knife while Guerro stabbed Reece, and appellant then retrieving his keys and fleeing with Chaparro and Guerro. As such, it was same transaction contextual evidence, and J.C.'s testimony about what he saw would have been admissible at both trials. This is not a situation, as presented in *Llamas*, in which the trial court "tried an 'apples' offense along with an unrelated 'oranges' offense in the hope that the jury would find the defendant guilty of being a generally bad sort." *Werner*, 412 S.W.3d at 548 (describing the erroneously consolidated drug and motor vehicle offenses in *Llamas*).

7

Appellant argues that he "quite possibly would not have been convicted for either offense had he been granted his request for separate trials"; however, he does not argue how his defensive strategy might have been different had the charges been severed. *See Werner*, 412 S.W.3d at 548 n.35 (considering lack of evidence regarding defensive strategy in considering whether appellant had shown harm in denial of severance).

The prosecutor did discuss both charges during closing arguments, but, as in *Werner*, such argument was appropriate because "all of the evidence [regarding both offenses] was admissible and therefore available for the prosecutor to use at trial. *Werner*, 412 S.W.3d at 551.

There is nothing in the record to suggest that the jury convicted appellant of murder simply because he was a "bad sort," as suggested by *Werner* as a reason for finding improper consolidations harmful. 412 S.W.3d at 548. The jury's questions to the judge during deliberation made clear that it was considering the charges separately. Specifically, the jury asked about the sentencing range for each offense, whether the punishments would be stacked, and, the jury actually acquitted appellant of the aggravated robbery charge.

Because the same evidence would have been admissible had the charges been severed and nothing else in the record shows that the erroneous consolidation affected appellant's substantial rights, we find that the trial court's refusal to sever

the charges was harmless error. *See Walls v. State*, No. 03-12-00055-CR, 2014 WL 1208017, at \*3 (Tex. App.—Austin Mar. 20, 2014, no pet.) (memo. op., not designated for publication) (holding no harm in trial court's failure to sever when same evidence would have been admissible in both cases as "same transaction contextual evidence" had cases been tried separately).

We overrule appellant's sole point of error.

## CONCLUSION

We affirm the trial court's judgment.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do not publish.   TEX. R. APP. P. 47.2(b).