# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00055-CR

**Rickey Desean Walls, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-11-904086, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Rickey Desean Walls guilty of two counts of aggravated robbery and two counts of aggravated assault. *See* Tex. Penal Code §§ 22.02, 29.03. After finding that Walls had previously been convicted of a felony, the jury assessed punishment at forty years' imprisonment for the first aggravated-robbery count, twenty years' imprisonment for the second aggravated-robbery count, fifty years' imprisonment for the first aggravated-assault count, and twenty-five years' imprisonment for the second aggravated-assault count, with the sentences to run concurrently. We affirm the judgment of the trial court.

## BACKGROUND

Paul Parma, the complaining witness in this case, was a bus driver for Capital Metro in Austin. On the day of the alleged assault, Parma was driving his route through downtown Austin when a person—whom Parma later identified as Walls—boarded the bus. Parma stated that Walls

was very upset because Parma did not allow him to board the bus in between stops. Parma tried to explain why he could not let Walls on earlier, to which Walls said "something like, yeah, keep talking, keep talking," which Parma perceived as a threat.

Parma testified that Walls remained at the back of the bus until the last remaining passenger exited at the second-to-last stop. Walls then moved to the front of the bus and Parma became "very scared." When Parma pulled into the last bus stop, he saw Sammy Salinas, a Capital Metro mechanic. Parma let his guard down because Salinas "is a big guy" and Parma thought "[n]o one is going to mess with me with Sammy there." This was the last thing that Parma remembered before the assault. When he regained consciousness, Parma was lying on his back and was surrounded by other employees who were telling him to remain still. Parma's face was numb and his memory of the rest of the day remained "foggy," but he recalled that he was transported to a local hospital and received treatment for his injuries.

The bus's security cameras recorded the entire incident, from when Walls entered the bus until Parma was removed by paramedics. The video shows Walls walking toward the front of the bus as if to exit, then hitting and kicking Parma, dragging Parma to the ground, and continuing to hit and kick Parma while he is down. When Salinas arrived at the scene, he saw Walls standing over an unconscious Parma. Walls told him to "walk away," and Salinas went to call for help. Finally, Walls demanded that Parma give him money and then took Parma's spiral note pad. By the time Salinas returned with help, Walls was gone and Parma's note pad was found on the ground outside the bus.

An investigating officer showed Salinas a photo array to see if Salinas could identify the assailant. Salinas picked Walls's picture out of the array and said that he was 80 to 90 percent

2

sure that the person in the picture was the person he saw standing over Parma. At trial, the State informed the trial court that Salinas could not make an in-court identification.

Police published video clips from the bus's security camera on local news outlets in an attempt to identify the assailant. Reginald Williams saw these images on a local news broadcast and in a magazine called "Busted!," and he recognized Walls as the assailant. Williams told his aunt—who worked for Capital Metro—that he recognized the assailant. Williams was contacted by the Austin Police Department, and when he met with the investigating officer, Williams identified Walls as the suspect from the security camera. The police officer then showed Williams four pictures of Walls—two "mugshots" in jail clothes and two in street clothes—and Williams confirmed that the person in these photographs was the person that Williams believed was depicted in the security footage.

Walls was indicted for three counts of aggravated robbery and three counts of aggravated assault.[1] Following a three-day trial, the jury found Walls guilty of Counts I, II, IV, and V, but not guilty on Counts III and VI. *See supra* n.1. After finding that Walls had previously been convicted of a felony, the jury assessed punishment as outlined above. This appeal followed.

---

[1] Count I alleges that Walls committed aggravated robbery by causing serious bodily injury in the course of committing theft, Count II alleges that Walls committed aggravated robbery by causing bodily injury and using his hands as a deadly weapon in the course of committing theft, and Count III alleges that Walls committed aggravated robbery by causing bodily injury and using his feet as a deadly weapon in the course of committing theft. *See* Tex. Penal Code § 29.03(a)(1)–(2) (defining aggravated robbery as robbery causing serious bodily injury or robbery where assailant uses or exhibits a deadly weapon); *see also id.* § 1.07(a)(17) (defining deadly weapon). Similarly, Count IV alleges that Walls committed aggravated assault by causing serious bodily injury, Count V alleges that Walls committed aggravated assault by causing bodily injury while using his hands as a deadly weapon, and Count VI alleges that Walls committed aggravated assault by causing bodily injury while using his feet as a deadly weapon. *See id.* § 22.02(a) (defining aggravated assault).

**DISCUSSION**

Walls raises four issues on appeal. First, he asserts that the trial court erred in failing to grant his motion to sever the offenses alleged in the indictment. Second, Walls complains that the evidence is insufficient to support his convictions. Third, Walls argues that the trial court made multiple evidentiary errors that, when viewed cumulatively, support reversal. Finally, Walls claims that the State failed to give him adequate notice of the extraneous-offense evidence it intended to introduce at the sentencing hearing. We address each of these issues separately.

**Severance**

In his first issue on appeal, Walls asserts that the trial court erred in denying his motion to sever the separate charges into separate trials. *See* Tex. Penal Code § 3.04(a) (giving defendant absolute right to sever trial for offenses consolidated under section 3.02). The State concedes that the trial court erred in denying Walls's motion to sever. *See id.*; *see also Werner v. State*, 412 S.W.3d 542, 546–47 (Tex. Crim. App. 2013) (explaining benefits and risks of defendant's exercising absolute right to sever). However, the State argues that such error was harmless because all of the evidence in this case would have been admissible at separate trials as contextual evidence of each offense.

Because the State concedes that the trial court erred in denying Walls's motion to sever, we consider only whether that error was harmful. *See Werner*, 412 S.W.3d at 547. Failure to grant a defendant's motion to sever is non-constitutional error that will be disregarded "unless it adversely affects a defendant's substantial rights." *See id.* (citing Rule 44.2(b) of the Rules of Appellate Procedure). Neither party bears the burden of demonstrating harm. *Id.* Rather, appellate

4

courts "assess harm after reviewing the entirety of the record, including the evidence, jury charge, closing arguments, voir dire, and any other relevant information." *Id.* (citing *Schutz v. State*, 63 S.W.3d 442, 444–45 (Tex. Crim. App. 2001)).

Although the entire record must be examined, generally, the most important factor in determining whether a trial court's failure to grant severance was harmful is the overlap in evidence that would have been admissible had the trials been severed. *See id.* at 549 (citing *Llamas v. State*, 12 S.W.3d 469, 471–72 (Tex. Crim. App. 2000), and *Scott v. State*, 235 S.W.3d 255, 259–61 (Tex. Crim. App. 2007), as "'book-end' cases" of when failure to grant severance is harmful). As the court of criminal appeals explained, when "the jury would not have heard any evidence about [one offense] but for the consolidated proceeding, . . . the error [is likely] harmful because the jury might well have convicted the defendant" for being a "bad man" rather than because the State proved the elements of each offense. *Id.* (quoting *Llamas*, 12 S.W.3d at 471–72, in which evidence related to possession-of-drug offense would not have been admissible to prove traffic offense). However, when there is "substantial overlap of evidence" that would have been admissible to prove each offense, "the failure to sever is most likely harmless." *Id.* at 548–49 (citing *Scott*, 235 S.W.3d at 258, in which evidence related to child-pornography charge would have been admissible to prove inducing-sexual-performance-of-child charge).

In this case, all of the charges relate to a continuous transaction against a single victim—Walls's assault of Parma and the attempted theft of Parma's money. *See supra* n.1. The State needed to introduce evidence of the assault and Parma's resulting injuries to prove the aggravated-robbery charges. *See* Tex. Penal Code § 29.02 (listing assault causing bodily injury as

5

element of robbery).  Similarly, evidence that Walls attempted to steal money from Parma and then stole Parma's note pad after he assaulted Parma would have been admissible in separate aggravated assault trials as "same transaction contextual evidence" to "show the circumstances surrounding the particular offense." *Worthy v. State*, 312 S.W.3d 34, 40–41 n. 28 (Tex. Crim. App. 2010) (internal quotations omitted) (explaining that fact that murder was committed in bordello, although not essential to proving elements of murder, admissible to show context of crime); *see also Werner*, 412 S.W.3d at 549–50 (explaining that evidence of earlier stalking offense would have been admissible at trial for later stalking offense to show escalation of defendant's harassing behavior).

Given that the evidence of each offense substantially—if not completely—overlaps with evidence of the other offenses, we conclude that the trial court's failure to grant Walls's motion to sever was harmless.  *See Werner*, 412 S.W.3d at 549.  We overrule Walls's first appellate issue.

**Sufficiency of the evidence**

In his second issue on appeal, Walls asserts that the evidence is insufficient to support his convictions in two respects.  First, Walls claims that the alleged assault was completed before he attempted to steal from Parma, and thus he did not cause bodily injury "in the course of committing theft." Tex. Penal Code § 29.02 (defining elements of robbery).  Therefore, according to Walls, the evidence is insufficient to establish that he committed robbery.  Second, Walls argues that the record fails to show that he caused serious bodily injury, and thus the evidence is insufficient to support a conviction for aggravated robbery or aggravated assault.  *See id.* §§ 22.02(a)(1)–(2) (requiring serious bodily injury or deadly weapon to prove aggravated assault), 29.03(a)(1)–(2) (requiring same to prove aggravated robbery).

6

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We view this evidence in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

As charged in this case, Walls committed aggravated robbery if, during the commission of robbery, he caused serious bodily injury or used or exhibited a deadly weapon. *See* Tex. Penal Code § 29.03(a)(1)–(2). A person commits robbery if "in the course of committing theft" and "with intent to obtain or maintain control of the property," he "intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* § 29.02(a)(1). "'In the course of committing theft' means conduct that occurs in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of theft." *Id.* § 29.01(1). Generally, "theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002). That "inference will not be negated by evidence of an alternative motive that the jury could rationally disregard." *Id.* Furthermore, although the motive in committing assault can be probative of the connection between the assault and theft, the ultimate issue is whether the assault occurred during the course of theft, not whether the theft was the primary motive behind the assault. *See Sorrels v. State*, 343 S.W.3d 152, 158 (Tex. Crim. App. 2011).

In this case, the record reflects that Walls attempted to steal Parma's money—and did steal Parma's note pad—immediately after the assault. This evidence supports an inference that

7

the assault was intended to facilitate the theft. *See Cooper*, 67 S.W.3d at 224. Although there is evidence that Walls's assault was also motivated by anger toward Parma, the jury could have either disregarded this competing inference or found that regardless of which motive predominated Walls's actions, the assault occurred during the course of the theft. *See id.*; *see also Sorrels*, 343 S.W.3d at 158. Therefore, the evidence is sufficient to support the jury's implied finding that Walls's assault of Parma occurred during the course of committing theft.

Similarly, there is sufficient evidence to support the jury's finding that the assault caused serious bodily injury. Serious bodily injury is injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Tex. Penal Code § 1.07(46). Permanent impairment is determined based on the injury "as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Stuhler v. State*, 218 S.W.3d 706, 714 (Tex. Crim. App. 2007) (internal citations omitted).

Parma's treating physician testified that had he not performed surgery to relieve the pressure near Parma's optic nerve, Parma could have suffered permanent impaired vision or blindness. Furthermore, Parma testified that as a result of the assault, his balance has been impaired to the point that he falls down occasionally. Based on this record, there is sufficient evidence that Walls's assault caused serious bodily injury. *See id.* Having concluded that the evidence is sufficient to support the jury's finding that the assault occurred during the course of committing theft and that Parma suffered serious bodily injury, we conclude that the evidence is sufficient to support Walls's convictions. Walls's second appellate issue is overruled.

8

**Evidentiary complaints**

In his third appellate issue, Walls asserts that the trial court committed multiple errors in admitting various evidence and testimony. First, Walls complains that the State failed to authenticate the video recording and still images of the assault taken from the bus's security camera. Second, Walls argues that the police officer who responded to the alleged assault should not have testified about information relayed to him from the 911 dispatcher because the information was hearsay and violated the Confrontation Clause. Third, Walls asserts that Williams's and Salinas's identifications of Walls as the assailant were unreliable. Finally, Walls complains that the State failed to establish the proper chain of custody for sandals purportedly belonging to Walls that were recovered from the Travis County Jail. Walls contends that the cumulative effect of these evidentiary errors denied him a fair trial.[2] *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) ("It is conceivable that a number of errors may be found harmful by their cumulative effect."); *Davis v. State*, 413 S.W.3d 816, 837 (Tex. App—Austin 2013, pet. ref'd) (reviewing cumulative effect of counsel's deficient performance to determine harm).

---

[2] We caution parties bringing cumulative-harm claims to brief each alleged error separately before discussing their cumulative effect, with appropriate citations to the record and relevant legal authority. *See* Tex. R. App. P. 38.1(i) (requiring appellate briefs to "contain clear and concise argument for the contentions made); *see also Werdlow v. State*, No. 13-04-00004-CR, 2005 WL 2008423, at *2 (Tex. App.—Corpus Christi Aug. 22, 2005, no pet.) (mem. op., not designated for publication) (treating cumulative-error claim as single legal theory). Otherwise, the party runs the risk of having the claim dismissed as multifarious. *See Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010) (concluding that single point of error asserting constitutional and statutory claims was multifarious); *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd) (noting that appellate court may refuse to review multifarious issue).

Before conducting a harm analysis, we must first determine whether the trial court erred in admitting the complained-of evidence. *See Chamberlain*, 998 S.W.2d at 238 ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *See Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). We will uphold a trial court's ruling if it is supported by the record and is correct under any theory of applicable law. *Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005).

*Authentication of security footage*

Walls complains that the trial court erred in admitting the video recording and still images from the bus's security cameras. Specifically, Walls argues that Laurie McCaleb—Capital Metro's "records management officer"—failed to authenticate the recording because she did not specifically testify that the footage is from the day of the alleged assault. Furthermore, according to Walls, McCaleb could not authenticate the videotape because she had no first-hand knowledge of the assault.

Texas Rule of Evidence 901 establishes the authentication requirements for the admissibility of evidence. "[A]uthentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). A videotape can be authenticated by testimony of a witness with knowledge that the video is what it is claimed to be as well as by its "contents, substance, internal

patterns, or other distinctive characteristics." *See id.* 901(b)(1), (4); *see also Page v. State*, 125 S.W.3d 640, 648 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (concluding that convenience-store clerk adequately authenticated security footage of robbery). The authenticating witness is not required to have observed the events depicted in the videotape firsthand, and she can authenticate the video by explaining how the recording was made and verifying that the recording has not been tampered with. *See Angleton v. State*, 971 S.W.2d 65, 68 (Tex. Crim. App. 1998) (witness who did not observe underlying events verified that security footage was not "spliced" or altered); *Page*, 125 S.W.3d at 648 (upholding admission of security footage where store clerk testified about how store security system recorded images and verified that footage had not been altered).

In this case, McCaleb testified that the bus's security cameras record footage from the bus as it occurs, the videos are then transferred to McCaleb's hard drive "near the time of the incident," and the hard drive is kept in a secure location. Furthermore, McCaleb stated that she reviewed the relevant security footage and verified that it "depicts what was going on on the bus during that person's shift during that period of time." Finally, the security footage itself has a date and time stamp that corresponds to the time of the alleged assault, and the jury could have reasonably determined that Walls and Parma were clearly depicted in the video. *See Crivello v. State*, 4 S.W.3d 792, 802 (Tex. App.—Texarkana 1999, no pet.) (noting that time stamp on video recording and jury's ability to verify that person depicted in video is defendant was sufficient to authenticate video). Based on McCaleb's testimony and the content of the video itself, we cannot conclude that the trial court abused its discretion in finding that the security footage was properly authenticated and therefore admissible.

11

*Information from 911 dispatcher*

Walls next complains that the trial court erred in admitting testimony about information relayed to a police officer by a 911 dispatcher. Specifically, Walls complains that the officer's testimony that he was responding to a call that "stated that a bus driver had been attacked" was inadmissible hearsay. Furthermore, Walls complains that the testimony violated the Confrontation Clause because he was not allowed to confront the witness who relayed that information to law enforcement authorities.

Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Generally, a hearsay statement is not admissible unless the statement falls within a recognized exception to the hearsay rule. *See Pena v. State*, 353 S.W.3d 797, 814 (Tex. Crim. App. 2011). In this case, the officer's testimony about the information he received from the dispatcher was not offered to prove that a bus driver had been attacked. Rather, the statement was admitted to explain how the officer came to investigate this offense. This is an acceptable, non-hearsay purpose for admitting an out-of-court statement. *See Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) (concluding that victim's appointment book indicating that she met with defendant was admissible for non-hearsay purpose of explaining how defendant became suspect); *McCreary v. State*, 194 S.W.3d 517, 521 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Therefore, we cannot conclude that the trial court abused its discretion in overruling Walls's hearsay objection.

Similarly, we conclude that the trial court did not err in overruling Walls's Confrontation Clause objection. *See Wall v. State*, 184 S.W.3d 730, 742–43 (Tex. Crim. App. 2006) (noting that courts review alleged violations of Confrontation Clause de novo). The Confrontation

Clause to the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U. S. Const. amend. VI. Generally, courts have construed the Confrontation Clause to prohibit prosecutors from admitting "testimonial" out-of-court statements against a defendant unless the defendant has been afforded the opportunity to cross-examine the declarant. *See De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). A statement is testimonial "when the surrounding circumstances objectively indicate that the primary purpose" for the declarant making the statement was "to establish or prove past events potentially relevant to later criminal prosecution." *Id.* (internal citations omitted). Once the defendant raises a Confrontation Clause objection, the burden shifts to the State to prove either (1) that the proposed statement does not contain testimonial hearsay and thus does not implicate the Confrontation Clause or (2) the statement does contain testimonial hearsay but is nevertheless admissible. *Id.* at 680–81 (citing *Crawford*, 541 U.S. at 59).

In this case, the trial court overruled Walls's Confrontation Clause objection before the State offered an explanation as to why the statement was admissible. *See id.* (concluding that trial court erred in admitting evidence that was "not obviously non-testimonial" after State failed to explain why evidence was admissible). However, "[s]tatements made to police during contact initiated by a witness at the beginning of an investigation are generally not considered testimonial." *Cook v. State*, 199 S.W.3d 495, 497–98 (Tex. App.—Houston [1st Dist.] 2006, no pet.); *see also Garcia v. State*, 212 S.W.3d 877, 882 (Tex. App.—Austin 2006, no pet.). For this reason, typical 911 calls initiated to summon police assistance are generally non-testimonial because they are "a cry for help" or "the provision of information enabling officers to end a threatening situation." *See*

13

*Davis v. Washington*, 547 U.S. 813, 832 (2006); *Cook*, 199 S.W.3d at 498; *see also Rodgers v. State*, No. 09-09-00359-CR, 2010 WL 3043705, at *2 (Tex. App.—Beaumont Aug. 4, 2010, no pet.) (mem. op., not designated for publication) (listing cases that conclude 911 calls are non-testimonial).

The officer's testimony in this case indicates that he was responding to a typical 911 call in which the victim or witness was seeking assistance in an emergency. Therefore, we conclude that the officer's statement about what information the 911 dispatcher relayed to him was clearly non-testimonial, and the trial court did not err in overruling Walls's objection on that basis. *See De la Paz*, 273 S.W.3d at 680. Having already concluded that the testimony was offered for a non-hearsay purpose, we conclude that the trial court did not err in admitting the officer's testimony. We overrule Walls's second evidentiary complaint.

*Identification of Walls as assailant*

In his third evidentiary complaint, Walls asserts that the trial court erred in admitting Williams's and Salinas's identification of Walls because the identifications were unreliable. "Reliability is the linchpin in determining admissibility of identification testimony." *Luna v. State*, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008). "The burden is on the defendant to show by clear and convincing evidence that the in-court identification is unreliable." *Harris v. State*, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992); *see also Jackson v. State*, 657 S.W.2d 123, 127–28 (Tex. Crim. App. 1983) (quoting *Neil v. Biggers*, 409 U.S. 188, 198 (1972), for proposition that standard for determining admissibility of out-of-court identification is same as standard for determining admissibility of in-court identification). We address the reliability of each witness's identification separately.

14

An identification is inadmissible when, under the totality of the circumstances, it has been tainted by an impermissibly suggestive pretrial photographic identification. *Luna*, 268 S.W.3d at 605. This review involves a two-step analysis: (1) whether the out-of-court identification was impermissibly suggestive; and, if so, (2) whether that suggestive procedure gave rise to a very substantial likelihood of irreparable misidentification. *See id.*; *Barley v. State*, 906 S.W.2d 27, 33 (Tex. Crim. App. 1995). This is a mixed question of law and fact that does not turn on the determination of a witness's credibility or demeanor, and we therefore review the trial court's determination de novo. *Loserth v. State*, 963 S.W.2d 770, 773 (Tex. Crim. App. 2008).

"Suggestiveness may be created by the manner in which the pre-trial identification procedure is conducted, for example by police pointing out the suspect or suggesting that a suspect is included in the line-up or photo array." *Barley*, 906 S.W.2d at 33. "Or it may also be created by the content of the line-up or photo array itself if the suspect is the only individual closely resembling the pre-procedure description." *Id.* However, the "mere fact that lineup participants do not perfectly match the physical description of the accused does not render a lineup impermissibly suggestive." *Wilson v. State*, 15 S.W.3d 544, 553 (Tex. App.—Dallas 1999, pet. ref'd). Even if the out-of-court identification procedure is impermissibly suggestive, "the identification testimony will be admissible if the indicia of reliability outweigh the apparent corrupting effect of the unnecessarily suggestive pretrial occurrence." *Harris*, 827 S.W.2d at 959.

Walls complains that Williams's identification was tainted because the investigating officer showed Williams "highly suggestive" mugshots of Walls in jail clothes and then asked Williams to verify that the man in the mugshot was the same person Williams knew as Walls.

15

However, Williams testified that he recognized the person in the security footage as Walls before he was contacted by investigators, that he knew Walls personally, and that he had socialized with Walls on several occasions. Furthermore, Williams unequivocally reaffirmed at trial that Walls was the person depicted in the security footage and that he knew it was Walls before he spoke to the police. Therefore, Williams testimony demonstrates strong indicia of reliability that outweigh any potential corrupting effect of the police officer's showing Williams pictures of Walls in jail clothing. *See id.*; *see also Ross v. State*, 715 S.W.2d 55, 56 (Tex. App.—Dallas 1986, no pet.) (concluding identification reliable where witness was familiar with defendant and never expressed any equivocation as to identification). Thus, we conclude that the trial court did not err in admitting Williams's identification testimony.

Similarly, we conclude that the trial court did not err in admitting Salinas's testimony about his prior identification of Walls in a photo array. Walls argues that Salinas's identification was unreliable because (1) Walls was the only person depicted in the photo array with "downcast eyes," (2) Salinas indicated that he was instructed to choose "which one fits the best," (3) Salinas told investigators that he was only 80% to 90% sure the person he identified in the photo array was the assailant, and (4) Salinas could not identify Walls at trial. Walls's first two complaints relate to the suggestiveness of the pretrial identification procedures, and Walls's third and fourth complaints relate to the overall reliability of Salinas's identification.

With respect to Walls's first two complaints, we conclude that the pretrial procedures were not overly suggestive. The fact that Walls's picture was the only one with downcast eyes does not make it sufficiently suggestive as to taint the photo array. *See Wilson*, 15 S.W.3d at 553 (noting

16

individuals in photo lineup need not be identical); *see also Reed v. State*, No. 14-02-00671-CR, 2003 WL 21782537, *1 (Tex. App.—Houston [14th Dist.] July 31, 2003, pet. ref'd) (mem. op., not designated for publication) (concluding that photo array not overly suggestive where defendant was only person with braided hair and different hair line). Furthermore, with respect to Walls's second complaint, Salinas testified that he was instructed to identify "which [photo] fits best, you know, fits the person that I saw." Salinas and the officer who showed him the array also testified that Salinas was read and signed a set of instructions before reviewing the photo array. These instructions, which were admitted at trial, informed Salinas that the suspect may not be any of the individuals in the photo array and "[i]f you do not recognize the subject, simply alert the investigator that you are done." Given this evidence, coupled with Salinas's testimony, the trial court could have reasonably found that Salinas was properly instructed that the suspect might not be in the photo array and that if none of the photographs were the suspect, Salinas should inform the police officer. *See Barley*, 906 S.W.2d at 33 (noting that officer did not indicate suspect was in array). Therefore, we conclude that Walls has failed to show that the pretrial identification procedures were unfairly suggestive.

Finally, we conclude that Walls has failed to show that Salinas's identification was unreliable. Walls asserts that Salinas's identification was unreliable because Salinas could only say that he was between 80% and 90% sure that the person in the photograph was the suspect he saw standing over Parma. However, a witness's level of certainty about the identification is only one factor in determining the identification's admissibility. *See id.* at 35 (noting that witness's in-court identification was admissible even though he could not identify suspect in photo array). Similarly, Walls's complaint that Salinas could not identify Walls at trial is only one factor in determining

17

whether Salinas's identification was reliable. Given Salinas's relative certainty about his identification at the time he viewed the photo array, along with our conclusion that the photo array was not impermissibly suggestive, we conclude that Walls has failed to show by clear and convincing evidence that Salinas's identification was unreliable. Therefore, we conclude that the trial court did not err in admitting Salinas's identification. We overrule Walls's complaint about Salinas's and Williams's identifications of Walls as the suspect.

*Sandals recovered from jail*

In his final evidentiary complaint, Walls asserts that the trial court erred in admitting testimony about sandals allegedly belonging to Walls that contained both Walls's and Parma's DNA. Specifically, Walls argues that the State failed to establish the beginning of the chain of custody for the sandals because the detective who retrieved the sandals from the Travis County Jail could not identify who originally collected the sandals from Walls. Thus, according to Walls, any evidence relating to the sandals was inadmissible because the State failed to establish a proper chain of custody for the sandals.

"[A]lthough the evidentiary rules do not specifically address proper chain of custody, they do state that identification for admissibility purposes is satisfied if the evidence is sufficient to support a finding that the matter in question is what its proponent claims." *Druery v. State*, 225 S.W.3d 491, 503–04 (Tex. Crim. App. 2007) (citing Tex. R. Evid. 901(a); *Kingsbury v. State*, 14 S.W.3d 405, 407–08 (Tex. App.—Waco 2000, no pet.)). The State may authenticate a piece of evidence by establishing the beginning and end of a chain of custody to show that the item presented at trial is the same one that was involved in the events at issue. *See Porter v. State*, 969 S.W.2d 60,

18

66 (Tex. App.—Austin 1998, pet. ref'd) (noting that beginning and end of chain of custody establish admissibility and any gaps in chain go to weight of evidence). However, "[a]bsent evidence of tampering or other fraud . . . problems in the chain of custody do not affect the admissibility of the evidence." *Druery*, 225 S.W.3d at 503–04 (concluding letter and envelope admissible even though State did not establish who originally seized letter or envelope).

In this case, the detective who retrieved the sandals from the jail explained that based on his knowledge of the jail's intake procedure, the sandals were taken from Walls by someone with the Travis County Sheriff's Office when Walls was booked into the jail. Furthermore, the detective explained that whoever originally collected the shoes marked them and Walls's other clothing with a tag indicating that they belonged to Walls. Given that the State clearly established the remaining links in the chain of custody and there is no indication in the record that the sandals were tampered with, we cannot conclude that the trial court abused its discretion in concluding that the State sufficiently authenticated the sandals. *See id.* We overrule Walls's complaint concerning the admissibility of the sandals.

Having concluded that the trial court did not err in admitting any of the complained-of evidence, we need not proceed to a cumulative harm analysis. *See Chamberlain*, 998 S.W.2d at 238 ("[W]e are aware of no authority holding that non-errors may in their cumulative effect cause error."). We overrule Walls's third appellate issue.

**Notice of extraneous offense evidence**

In his fourth and final issue on appeal, Walls complains that the trial court erred in admitting extraneous-offense evidence during the punishment phase of trial. Specifically, Walls

19

argues that the State failed to adequately identify the victim, date, and county of the alleged extraneous offense as required by the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 37.07, § 3(g). Thus, according to Walls, the trial court erred in overruling his objection to the extraneous-offense evidence.

As with other evidentiary rulings, we review a trial court's decision to admit or exclude extraneous-offense evidence for an abuse of discretion. *Roethel v. State*, 80 S.W.3d 276, 280 (Tex. App.—Austin 2002, no pet.). However, article 37.07, section (g) of the Code of Criminal Procedure "limits the trial court's discretion to admit evidence of extraneous offenses at the punishment phase." *Id.* The statute specifies that if the State "intends to introduce an extraneous crime or bad act that has not resulted in a final conviction . . . notice of that intent is reasonable only if the notice includes the date on which and the county in which the alleged crime or bad act occurred and the name of the alleged victim of the crime or bad act." Tex. Code Crim. Proc. art. 37.07, § 3(g).

In this case, the State provided notice that it intended to introduce evidence about three pending robbery cases against Walls. The notice included the following description of the indicted—but unadjudicated—offenses:

1. The defendant is charged with the Offense of Robbery committed on or about June 12, 2011 in cause number D1DC 11203159 in the 403rd Judicial District Court of Travis County, Texas.

2. Defendant is charged with the offense of Aggravated Robbery committed on our about June 12th, 2011 in cause number D1DC 11301523 in the 403rd Judicial District in Travis County, Texas.

3.　The Defendant is charged with the offense of Aggravated Robbery committed on or about June 10th, 2011 in cause number D1DC 11301320 in the 403rd Judicial District Court of Travis County.

Although this notice lists the dates, county, and nature of the alleged extraneous offenses, the notice fails to list the name of the victims of any of the alleged robberies. Therefore, we must conclude that the State failed to comply with the notice requirements of article 37.07, section 3(g). *See id.*

However, as this Court has made clear, failure to comply with this statutory-notice requirement does not render extraneous-offense evidence per se inadmissible. *See Roethel*, 80 S.W.3d at 282. Unlike the rules of evidence, "[t]he notice requirement found in section 3(g) . . . does not relate to the substantive admissibility of the evidence." *Id.* (internal citations omitted). Rather, the "purpose of the notice requirement is to enable the defendant to prepare to meet extraneous offense evidence." *Id.* (citing *Nance v. State*, 946 S.W.2d 490, 493 (Tex. App.—Fort Worth 1997, pet. ref'd)). "Thus, we must analyze how the deficiency of the notice affected appellant's ability to prepare for the evidence." *Id.*; *see also West v. State*, No. 03-05-00371-CR, 2008 WL 4899189, at *6–7 (Tex. App.—Austin Nov. 14, 2008, pet. ref'd) (mem. op., not designated for publication) (concluding that notice of intent to introduce evidence of recent conviction was reasonable under circumstances where State did not act in bad faith and defendant was aware of facts of extraneous offense).

In this case, the State's notice informed Walls that it intended to introduce evidence of three extraneous offenses for which Walls had been indicted. The notice provided the cause number and identified the court where those indictments were pending. Furthermore, during a discussion outside the presence of the jury, the trial court took judicial notice of the fact that these

21

indictments were pending in the same court as the current offenses; Walls had been arraigned for those indictments; Walls had previously received copies of the indictments in those cases; and those indictments provided greater detail about the alleged extraneous offenses, including the victims' names. Based on this record, we conclude that the State's failure to comply with section 3(g) of article 37.07 did not affect Walls's ability to prepare for the extraneous-offense evidence. *See id.* Therefore, we conclude that the trial court did not abuse its discretion in admitting the extraneous-offense evidence at the punishment phase of trial. We overrule Walls's fourth appellate issue.

## CONCLUSION

Having overruled Walls's four issues on appeal, we affirm the trial court's judgment of conviction.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   March 20, 2014

Do Not Publish

22