

# NUMBER 13-22-00388-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

ALVIN MUMPHORD III
A/K/A ALVIN MUMPHORD,                                        Appellant,

**v.**

THE STATE OF TEXAS,                                          Appellee.

---

## On appeal from the 24th District Court
## of Victoria County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Justice Benavides**

Appellant Alvin Mumphord III a/k/a Alvin Mumphord appeals his convictions for:

(1) eight counts of indecency with a child, second-degree felonies, *see* TEX. PENAL CODE

ANN. § 21.11; (2) three counts of online solicitation of a minor, second-degree felonies,

*see id.* § 33.021; and (3) six counts of improper relationship between an educator and a

student, second-degree felonies, *see id.* § 21.12. Mumphord was sentenced to five years' imprisonment on each of the eight counts of indecency with a child, and four years' imprisonment on each of the remaining counts. The trial court ordered the indecency with a child sentences and the online solicitation of a minor sentences to all run consecutively, and it ordered the improper relationship between an educator and a student sentences to run concurrently.

By six issues, which we have reorganized, Mumphord contends the trial court erred by: (1) denying his motion for a continuance; (2) preventing him from conducting an effective voir dire; (3) denying his motion seeking certain discovery from the State; (4) denying his motion to set aside a bond forfeiture; and (5–6) denying his motion to sever the counts in the indictment. We affirm.

## I.     MOTION FOR CONTINUANCE

By his first issue, Mumphord contends that the trial court erred by denying his second motion for continuance.

### A.     Background

Mumphord filed two requests for continuances based on his contraction of COVID-19. Trial was originally scheduled to commence on July 25, 2022. However, Mumphord filed a motion for continuance, which the trial court granted, and trial was reset to August 1, 2022. The second motion for continuance was filed on August 1, 2022, and the court heard evidence and argument on the motion the same day.

Mumphord's physician, Edward Ferrell, M.D., testified as a witness and sponsored the admission of Mumphord's medical records. According to these records, Dr. Ferrell

2

initially diagnosed Mumphord with bronchitis on July 22, 2022. However, Mumphord then sought emergency treatment at Citizens Medical Center on July 24, 2022. As a result of this emergency visit, Mumphord was diagnosed with COVID-19. The notes from this visit indicate that Mumphord suffered "a sore throat, fever[,] and muscle aches" and could "[r]eturn to work in three days."

On July 29, 2022, Mumphord visited Dr. Ferrell again. The notes from this visit are contradictory. At the beginning of the medical report, Dr. Ferrell noted that Mumphord's symptoms included a "[c]ough, congestion, . . . chest tightness, dizzy, weak, abdominal pain, no appetite." However, in a section of the report entitled review of systems, Dr. Ferrell noted that Mumphord had no "fever, chills, weakness[,] or fatigue," no "congestion, runny nose[,] or sore throat," no "chest pain, chest pressure[,] or chest discomfort," and no "shortness of breath, cough, or sputum." Dr. Ferrell's ultimate recommendation was for Mumphord "to rest and stay in town until 08/08/2022." On the stand, Dr. Ferrell explained that Mumphord would likely have difficulty concentrating and recommended Mumphord stay home to avoid worsening his symptoms and potentially putting the public at risk.

Defense counsel argued that he needed to be able to speak to his client. Mumphord's symptoms at the time of trial included laryngitis, which impeded his ability to speak. Additionally, counsel argued that the jury may infer some bad character if his client wore a mask during the trial. Counsel also contended that forcing Mumphord to appear masked was a violation of the Confrontation Clause. *See* U.S. CONST. amend. VI. Counsel alternatively speculated that if Mumphord appeared without a mask, the jury might resent

3

him for not complying with public health protocols. The trial court denied the motion for continuance and made no explicit ruling on whether Mumphord was required to wear a mask.

## B.  Standard of Review & Applicable Law

"A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion. A continuance may be only for as long as is necessary." TEX. CODE CRIM. PROC. ANN. art. 29.03. "We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). "To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion." *Id.* "Speculation will not suffice to obtain reversal for a trial court's failure to grant a continuance." *Kinnett v. State*, 623 S.W.3d 876, 906 (Tex. App.— Houston [1st Dist.] 2020, pet. ref'd) (quoting *Nwosoucha v. State*, 325 S.W.3d 816, 825 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd)).

## C.  Analysis

Mumphord asserts that he was prejudiced by the denial of his motion for continuance because: (1) he was forced to wear a mask and was therefore not afforded the constitutional right to confront witnesses; and (2) his symptoms precluded him from effectively communicating with his counsel during the proceedings. We will address these assertions in turn.

First, to the extent that Mumphord asserts his Sixth Amendment right was violated because he was not allowed to appear unmasked, there is nothing in the record that

4

reflects the trial court required Mumphord to wear a mask. We will not reverse the trial court's judgment based on an assigned error that is not supported by the record. *See* TEX. R. APP. P. 44.2 (discussing reversible error in criminal cases generally).

Second, Mumphord argues that "evidence exists with no rebuttal that [Mumphord] had laryngitis to the extent he could not plea[d] 'guilty' or 'not guilty' to the various counts, and was thus also impacted in his ability to communicate with trial counsel." The record reflects that when the trial court read the indictments, Mumphord could not produce a verbal plea of not guilty. To accommodate this, after reading each charged offense alleged in the indictment, the trial court asked, "To which the Defendant pleads not guilty?" In response, Mumphord nodded his head each time, indicating his desire to plead not guilty to each count. Mumphord cites *Geders v. United States*, 425 U.S. 80 (1976), to support his assertion that his right to effective assistance of counsel was thwarted by the trial court forcing him to appear while sick. In *Geders*, the Supreme Court of the United States held that "an order preventing [a defendant] from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct-and cross-examination impinged upon his right to the assistance of counsel guaranteed by the Sixth Amendment." *Id.* at 91.

That is not what occurred here. The record does not reflect that Mumphord was ordered to not communicate with his attorney. *See* TEX. R. APP. P. 44.2. Nor does the record reflect that Mumphord requested some accommodation in communicating with his attorney that was denied by the trial court.[1] *See Ex parte Marez*, 464 S.W.2d 866, 868

---

[1] We also note that after denying the motion for continuance, the following exchange occurred between the trial court and Mumphord's attorney:

5

THE COURT: I was going to give you, and I still will give you, the opportunity to choose between two things, and I can either let you appear by Zoom, and you can talk to him whenever you want. If you want him to park in the parking lot, you can do that. I will allow you to communicate whenever you want, or if you don't want that or are saying you're not going to do that, then I'll order him to appear in person, so you have your choice of that.

[Defense counsel]: So, Judge, there's really no choice.

THE COURT: Oh, it is. It is a choice between two alternatives. One is you can communicate with him any time you want, but he's appearing by Zoom; or, two, if you say, I am not going to do that, then the Court is ordering him to be here.

[Defense counsel]: Appearing by Zoom, I can't talk to him.

THE COURT: No, I just told you I will let you talk to him whenever you want.

[Defense counsel]: That's not feasible in the trial setting, Judge.

THE COURT: What you're saying is you're not going to do it?

[Defense counsel]: Not Zoom, no.

THE COURT: Then fine. That's all I need. That's all I need. I was going to give you that option, but if you don't want to, that's fine, but I just want it on the record that I gave you the opportunity.

[Defense counsel]: But, Judge, you won't allow me to make a record as to why I am saying that appearing by Zoom won't be feasible in a trial setting like this, Judge, for several reasons.

THE COURT: We can disagree—we can disagree on that, okay?

[Defense counsel]: But, Judge, you still have to let me make my record.

THE COURT: You put it on the record.

[Defense counsel]: I have not. You keep cutting me off. I don't know why you hate me so much.

THE COURT: I don't hate you, sir.

[Defense counsel]: I have been so respectful to the Court.

THE COURT: You are 100-percent wrong. I do not hate you. I am trying to move this trial along. I did not [sic] tell you you had two options. I brought you in here to give you the courtesy. You said, no, I don't want to do that, and therefore we're not going to do it. You've already put on the record all the reasons you don't think it's fair for him to have

6

(Tex. Crim. App. 1971). The ability to communicate is a basic aspect of effective assistance of counsel. *Adams v. State*, 749 S.W.2d 635, 639 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (citing *Baltierra v. State*, 586 S.W.2d 553, 559 n.11 (Tex. Crim. App. 1979)). But it is not unusual for there to be some sort of barrier to instant verbal communication between an attorney and her client. *See, e.g.*, *Linton v. State*, 275 S.W.3d 493, 504 (Tex. Crim. App. 2009) ("'[S]imultaneous interpretation is not always the gold standard,' especially when the defendant is, as in this case, linguistically deficient and in need of having concepts explained to her. This explanative function belongs to the attorney who normally explains legal concepts and the significance of the facts to his client (whether impaired or not) before trial or during breaks." (footnote omitted)). The negative effects of these language barriers are sometimes, though not always, diminished by employing an interpreter, passing notes, etc. *See* Matthew S. Compton, *Fulfilling Your Professional Responsibilities: Representing a Deaf Client in Texas*, 39 St. Mary's L.J. 819, 894–900 (2008). Indeed, after the trial court's ruling, Mumphord's attorney stated, "I

---

|  |  |
|---|---|
|  | to come here, so I wanted to give you another option. You said no, and that's fine. |
| [Defense counsel]: | If I can't be heard, I'll just be quiet, Judge. |
| THE COURT: | You can put anything on the record, [defense counsel], that you wish to do, as long as you're not repeating yourself. |
| [Defense counsel]: | Judge, I have health issues. I don't want to fight. I don't want to fight. |
| THE COURT: | You're choosing not to talk, that's fine. |

The main reason we detail this interaction is because it reflects the trial court gave Mumphord an option, at least in theory, to appear via Zoom and communicate with his attorney "whenever [he] want[ed]." As an aside, we are cognizant of the contemptuous interactions between the trial judge and Mumphord's defense attorney that pervaded the proceedings.

am going to do my best to talk with him with notes . . . ."

Although it is possible that Mumphord's laryngitis and his infection with a communicable disease significantly impeded his ability to communicate with his attorney, there is no evidence of this in the record. *See Linton*, 275 S.W.3d at 509 ("[T]he record reflects that appellant understood the proceedings well enough to assist in her own defense; moreover, whatever communication difficulties might have existed between appellant and her trial counsel were not apparent in the record."). Mumphord did not discuss the denial of his second motion for continuance in his motion for new trial, and he did not otherwise introduce evidence below to substantiate his assertion that he was unable to effectively communicate with his attorney at trial because of his COVID-19 symptoms. We will not speculate that such evidence exists. *See Kinnett*, 623 S.W.3d at 906 ("Speculation will not suffice to obtain reversal for a trial court's failure to grant a continuance." (quoting *Nwosoucha*, 325 S.W.3d at 825)). Because Mumphord has not shown he was prejudiced by the trial court's denial of his second motion for continuance, we overrule this issue. *See id.*; *Cordova-Lopez v. State*, No. 01-20-00724-CR, 2022 WL 17813762, at *2 (Tex. App.—Houston [1st Dist.] Dec. 20, 2022, pet. filed) ("Cordova-Lopez has not articulated any specific instance in which COVID-19 precautions hampered or impaired him. Furthermore, he did not file a motion for new trial or seek to obtain a post-judgment hearing to produce evidence regarding any actual harm he suffered during trial because of the denial of his motion for continuance."); *see also* TEX. R. APP. P. 44.2.

## II.     VOIR DIRE

By his second issue, Mumphord argues that, because the trial court prevented him

from questioning the venire about any bias its members had as to the full range of punishment, he was precluded from conducting voir dire in an effective manner.

## A.    Background

During the State's portion of voir dire, the prosecutor stated,

I need to talk to you about whether or not you can follow the law in assessing or considering the full range of punishment for allegations such as these. And each of these is second degree felonies carrying a range of punishment between two and 20 years in prison, up to a $10,000 fine, and it's very likely the defendant would be eligible for probation if you saw fit.

Is everyone that potentially could serve as a juror in this case open to the full range of punishment? A probated sentence all the way up to 20 years in prison and a fine up to $10,000?

In response, a venireperson admitted that they would be unable to consider the full range of punishment. The trial court interrupted the proceedings as follows:

THE COURT:    Let me—I want to say one thing about this full range of punishment. In order to be qualified to sit on this jury, you must be able to accept in a given circumstance the full range of punishment. Now, that does not mean in this case you would consider probation or all the way up to 20 years. It means, can you think of a set of facts that would allow you to give the minimum of probation or the maximum of 20 years.

For example, here are examples of that. If you had a 17-year-old and a 19-year-old and they were madly in love, nevertheless, it was sexual assault, could you perhaps consider probation in that case. And in the extreme, someone who, let's say, has been to the penitentiary 10 times for this type of offense, you might give the max. What I want you to understand, it's not limited to these facts. It's can you think of a set of facts that would allow you to consider, not to give, to consider the minimum or the maximum. That's what— I wanted to get that across because most jurors— potential jurors think it means, would you give probation in this case, or would you give the maximum?

Defense counsel objected to the trial court's question, and the trial court overruled the objection. During the defense's portion of voir dire, the following exchange occurred:

| | |
|---|---|
| [Defense counsel]: | By a show of hands—and this is a really, really important question. As the DA stated, [Mumphord] is quite possibly eligible for probation, but if you . . . know in your heart of hearts if you find a person guilty of indecency with a child after you heard the evidence o[f] online solicitation of a minor or improper relationship with a student, can you truthfully consider the lowest form of punishment to the highest form of punishment[?] That is what the law requires, not how you will vote, but just would you truthfully consider probation or up to 20 years in prison? |
| THE COURT: | And it's in an appropriate case, right, Counselor? In an appropriate case? |
| [Defense counsel]: | In an appropriate case, correct. |
| THE COURT: | In other words, it's not this case. It's in an appropriate case, could you consider probation? I gave you an example of maybe a 17 and a 19-year-old lovers, and in an appropriate situation would you consider the maximum, somebody has committed this crime 10 times? I want you to understand it's not this case on these facts. It is an appropriate case, could you consider probation? In an appropriate case, could you consider the maximum 20 years? |
| | . . . . |
| [Defense counsel]: | [The State] told you the three charges, okay? I am not trying to confuse you. Everyone understands what I am saying? |
| | . . . . |
| | This is a very important question. That's why I've got to go row by row. |

|  |  |
|---|---|
| | The second row, can you consider the lowest form of punishment, probation, in a case like th[is]? |
| THE COURT: | In an appropriate case, not like this case. |
| | . . . . |
| [Defense counsel]: | So, folks, this is a question—and, like I said, it's very important, and I am going to try to ask it the way that I can. |
| | In a case like these [sic], let's go one by one. Indecency with a child by contact, can you consider— |
| THE COURT: | Sexual contact, please, Counselor. |
| [Defense counsel]: | By sexual contact, can you consider an appropriate— |
| THE COURT: | Set of facts. |
| [Defense counsel]: | –set of circumstances where you could consider, not give it, but consider the minimum punishment, which is probation in a sexual indecency with sexual contact, if you find them guilty and you—can you consider an appropriate situation where you can consider probation, starting with row number one? |
| VENIREPERSON 4: | (Shakes head side to side.) |
| [Defense counsel]: | No. 4 says she can't. Thank you for your honesty. |
| THE COURT: | Let me—let me clarify it. He's not giving you the law. The law is very clear. He's charged with 18 counts. I am just going to use one count to illustrate the way that you're supposed to ask the question. You're supposed to be asked this question: The Defendant is charged with indecency—these are different counts. I am just going to use one of them—is charged with indecency with a child [by] sexual contact. Can |

11

you conjure up in your mind a set of facts that would allow you to consider probation?

Now, that means not this case, but I gave the example. It's a 17-year-old and a 19-year-old. That's a set of facts that you might can consider probation. Likewise, can you consider a set of facts—a set of facts I use in this instance to give the maximum. He's been convicted 10 times before. It's not based on these facts. Can you in your mind think of a situation which would allow you to consider probation and which would allow you to consider 20, then you are qualified to sit on this jury. It's not these facts because, truthfully, you know nothing about these facts, and you won't unless you're on this jury. That's why to qualify you, you have to be able to think of a set of facts that would allow you to consider probation. Can you think of a set of facts that would allow you to give the maximum? If you can do that, then you are qualified to set on this jury.

[Defense counsel]:     All right, folks. So I have not given you any set of facts. I am not asking you for a set of facts; all right? I can't tell y'all what the evidence is in this case. It's not proper for me to do that here.

Can you consider in a case like indecency with a child by sexual contact, can you think of a situation where you would consider probation? If you can't think of a situation where you would ever consider giving probation, we need to know, and I am just asking for your total honesty, okay?

The question is also for online solicitation [of] a minor. If you can't think of a situation where you could ever consider giving a defendant probation, we need to know.

. . . .

Lastly, the count of improper relationship between a student and a teacher, honest answers. If you, after finding the defendant guilty, if you find him

12

guilty, if you cannot consider ever a situation where you could consider the minimum of probation for that particular count, please tell me. Please tell me.

This row?

I know No. 4 cannot consider probation.

Row No. 2, honest answers, who can raise their hand and say, I cannot consider giving probation if I find him guilty on these particulars? I don't care what scenario, I don't care what set of facts.

THE COURT: But you see you're not giving them what the law is, Counselor. You didn't then.

All right. For example, Juror No. 4, can I ask you a question?

VENIREPESRON 4: Yes.

THE COURT: I want you to assume with me that you conjured up a set of facts in which there was a 16-year-old girl and an 18-year-old boy, and they had been dating for some time, and there was sexual contact between the two. Can you consider that set of facts which might entitle you in your mind's eye to give probation? Consider it? Excuse me, to consider probation?

VENIREPERSON 4: No.

. . . .

THE COURT: Okay. Well, then, you're not qualified. That's fine. I just want everybody to understand. If you can think of a set of facts where you would consider probation, if they're lovers, and they're 18 and they're 16, and they love each other, then the only appropriate punishment, if you can't consider probation, is penitentiary, that's fine. If that's how you feel, then you need to let us know. Or if you can think of any other situation in which probation

13

would be appropriate in your mind.

[Defense Counsel]: So, folks, that's where I am getting at. I don't want to give you a certain set of facts like that. You may think of other facts in your own mind where you can consider probation, so I don't want to limit that.

. . . .

Row No. 3, can you think of a scenario where you could consider probation for these three offenses if you saw appropriate? Who could not consider probation—

THE COURT: In an appropriate case.

[Defense Counsel]: —in an appropriate case such as this?

THE COURT: No, no, no, no. You just had to put that in there, didn't you?

(Laughing.)

THE COURT: Do you see what I've been getting at, Counselor? You can't say, "as in this case," because then you're limiting them to the facts of this case. That is not appropriate.

Yes, ma'am. No. 46.

VENIREPERSON 46: Can he just say if you can't consider probation raise your hand?

THE COURT: No, that's not appropriate because—

Well, let me explain why. Because it's not can you consider probation in this case. It's can you think of a case in which you would consider probation? And can you think of a case in which you would consider prison? That's what it is. I can't let you get on the jury if you say, Well, I am thinking of this case, because that's not the law. You're not supposed to be able to say, Well, in this case I

14

couldn't consider probation. It's can you think of a set of facts that would allow you to consider probation.

Let me do this for the whole panel. If you can consider a set of facts in an indecency with a child [by] sexual contact [case], if you can think of a set of facts—I used one, but you can think of any set of facts—that would allow you not to give probation, but to consider it, then you're qualified to sit.

Is there anybody other than Juror No. 4 who can't think of a set of facts, whatever that might be, that would allow you to consider—it doesn't mean give—probation, then raise your hand and tell us that you would always give prison time?

Vice versa, if you can think of a set of facts, been convicted 10 times of this offense that would be prison, then you're qualified.

Is there anybody other than Juror No. 4 who can't think of a set of facts, whatever that might be, that would allow you to consider—it doesn't mean give—probation, then raise your hand and tell us that you would always give prison time?

A venireperson then admitted that they could not consider the full range of punishment when confronted with the charge of an improper relationship between a teacher and a student. The trial court responded by pressing the venireperson to reexamine their position when considering a sexual relationship between teenagers. The venireperson again confirmed that they could not consider the full range of punishment. Defense counsel further explored this topic with the venire and then moved on to a different line of inquiry.

15

**B.**     **Standard of Review & Applicable Law**

When a party complains that they were precluded from questioning the venire on a certain issue, the following two-pronged test applies: "(1) whether the complaining party attempted to prolong the voir dire by asking questions that were irrelevant, immaterial, or unnecessarily repetitious and (2) whether the questions the party was not permitted to ask were proper voir-dire questions." *Wappler v. State*, 183 S.W.3d 765, 773 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). "Both the State and the defense are entitled to jurors who can consider the entire range of punishment for the particular statutory offense—*i.e.*, from the maximum to the minimum and all points in between." *Cardenas v. State*, 325 S.W.3d 179, 184 (Tex. Crim. App. 2010). A juror that cannot consider the full range of punishment can be challenged for cause. Tex. Code Crim. Proc. Ann. art. 35.16(c)(2); *Cardenas*, 325 S.W.3d at 185. "Therefore, both sides may question the panel on the range of punishment and may commit jurors to consider the entire range of punishment for the statutory offense." *Cardenas*, 324 S.W.3d at 184 (footnote omitted).

We review a trial court's ruling on the propriety of a particular voir dire question for an abuse of discretion. *Green v. State*, 191 S.W.3d 888, 892 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). And while trial courts have broad discretion over how voir dire is conducted in any given case, "a trial judge must not exceed his discretion by denying a proper question or allowing an improper question." *Atkins v. State*, 951 S.W.2d 787, 790 (Tex. Crim. App. 1997). A question which seeks to "bind or commit a prospective juror to a verdict based on a hypothetical set of facts" is improper unless "one of the possible answers to that question . . . give[s] rise to a valid challenge for cause." *Standefer v.*

16

*State*, 59 S.W.3d 179, 182 (Tex. Crim. App. 2001). "In addition, a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition is not proper and may be prevented by the trial judge." *Barajas v. State*, 93 S.W.3d 36, 38 (Tex. Crim. App. 2002).

A trial court's refusal to allow counsel to ask proper questions of the venire can be constitutional or non-constitutional error, depending on the nature of the question counsel sought to ask. *See Easley v. State*, 424 S.W.3d 535, 541 (Tex. Crim. App. 2014) (holding that, while the error in the case before it constituted non-constitutional error, "[t]here may be instances when a judge's limitation on voir dire is so substantial as to warrant labeling the error as constitutional error"); *Quezada v. State*, 553 S.W.3d 537, 546 (Tex. App.—El Paso 2018, no pet.) ("The trial judge denied [d]efense [c]ounsel the ability to discover if any of the venire could not consider probation, and thus denied him the ability to exercise his strikes intelligently. . . . This ultimately denied Appellant the constitutional right to an impartial jury, and this error is analyzed under Rule 44.2(a)'s harmless-error standard . . . .").

## C.    Analysis

Mumphord contends that he was denied the right to properly voir dire the venire as to the full range of punishment. The State represents that "[t]he [t]rial [c]ourt did not disallow the question, so much as limited what, in its discretion, the [t]rial [c]ourt found to be an improper commitment question."

The trial court seemed rankled that Mumphord's attorney wanted to imply that "this case" was an appropriate one for probation. Conversely, the trial court corrected

17

Mumphord's attorney and implied to the jury that "this case" was, in fact, not appropriate for probation. We outline the following for the benefit of the trial judge, who claimed that "the law hasn't changed in . . . 31 years" and asked defense counsel whether he was willing to "bet all the money in [his] pockets" that the trial court's interpretation of the law on this subject was incorrect. "Commitment questions are those that commit a prospective juror to resolve, or to refrain from resolving, an issue a certain way after learning a particular fact." *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001). "[A]n attorney cannot attempt to bind or commit a prospective juror to a verdict based on a hypothetical set of facts." *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991).

"[A]lthough commitment questions are generally phrased to elicit a 'yes' or 'no' answer, an open-ended question can be a commitment question if the question asks the prospective juror to set the hypothetical parameters for his decision-making." *Standefer*, 59 S.W.3d at 180. For instance, the following is an improper commitment question: "If the evidence, in a hypothetical case, showed that a person was arrested and they had a crack pipe in their pocket, and they had a residue amount in it, and it could be measured, and it could be seen, is there anyone who could not convict a person, based on that?" *Id.* at 179. Other examples of improper commitment questions include, "What circumstances in your opinion warrant the imposition of the death penalty?" or "Could you consider probation in a case where the victim is a nun?" *Id.* at 180. A proper commitment question, on the other hand, would be, "Can you consider probation in a murder case?" *Id.* at 181; *see Hernandez v. State*, 390 S.W.3d 310, 315 (Tex. Crim. App. 2012) ("Where the law requires a certain type of commitment from jurors, such as considering the full range of

18

punishment, an attorney may ask prospective jurors to commit to following the law in that regard.").

Here, defense counsel sought to determine whether the venire could commit to considering the full range of punishment "in this case," without providing the venire with any facts of the case or any hypothetical scenarios.[2] "[D]ue process does not require that jurors be completely ignorant of the facts of the case." *Penry v. State*, 903 S.W.2d 715, 727 (Tex. Crim. App. 1995). Rather, "[d]ue process requires only that a juror lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* Mumphord sought to ask this question during voir dire, when no evidence had yet been presented in court. The only conceivable reason any potential juror would not be able to consider the full range of punishment "in this case," at this point in the proceedings is bias, either for or against Mumphord or against a certain punishment, both of which would be valid reasons to challenge the juror for cause. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9), (c)(2). We will assume without deciding that the question trial counsel sought to ask was appropriate.

However, ultimately, an equivalent question regarding the full range of punishment was asked of the venire. Specifically, the trial court asked the jurors, "Is there anybody . . . who can't think of a set of facts, whatever that might be, that would allow you

---

[2] The trial judge, on the other hand, pressed the venire multiple times to imagine a sexual relationship between two teenagers and asked whether members of the venire could consider probation when confronted with that factual scenario. He also asked whether potential jurors could consider the maximum punishment in a case where a defendant had been previously incarcerated on ten or so different occasions. Although we have not been asked to address the propriety of the trial judge's comments, the case law cited above speaks for itself. *See Standefer v. State*, 59 S.W.3d 177, 179–80 (Tex. Crim. App. 2001); *Allridge v. State*, 850 S.W.2d 471, 480 (Tex. Crim. App. 1991); *see also Weaver v. State*, 355 S.W.3d 911, 913 (Tex. App.—Amarillo 2011, pet. ref'd) ("[A]sking a juror if he is able to 'consider' the full range of punishment is a proper commitment question.").

19

to consider . . . probation . . . ?" *See Sadler v. State*, 977 S.W.2d 140, 142 (Tex. Crim. App. 1998) (explaining that qualified prospective jurors "must be able, in a sense, to conceive both of a situation in which the minimum penalty would be appropriate and of a situation in which the maximum situation would be appropriate." (citing *Fuller v. State*, 829 S.W.2d 191, 200 (Tex. Crim. App. 1992)), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529 (Tex. Crim. App. 1995)). Mumphord's attorney was able to continue exploring this concept with the venire. "There is no error in prohibiting duplicitous questions where investigation into possibly proper or fruitful matters is not entirely prevented." *Allridge*, 762 S.W.2d at 167. Because Mumphord's attorney was not prevented from exploring this specific issue with the venire, we conclude that no error occurred. *See id.*

We overrule Mumphord's second issue.

### III.    DISCOVERY

Mumphord argues by his third issue that the trial court abused its discretion in denying his request to obtain the arrest records of all testifying witnesses.

### A.    Standard of Review & Applicable Law

"[T]he state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." TEX. CODE CRIM. PROC. ANN. art. 39.14(h). "Article 39.14 is a comprehensive discovery statute that provides limited authorization for a trial court to order discovery, and a trial court abuses its discretion by ordering discovery

20

outside its confines." *Branum v. State*, 535 S.W.3d 217, 224 (Tex. App.—Fort Worth 2017, no pet.). "Thus, we review a trial court's rulings regarding pretrial discovery for an abuse of discretion." *Id.*

"The disclosure requirements of Article 39.14 are limited to pre-existing documents and items already in the State's possession, meaning that the trial court cannot order the State to create a document that is not already in its possession, custody, or control, even after the passage of the Michael Morton Act." *In re State*, 659 S.W.3d 1, 14 (Tex. App.— El Paso 2020, orig. proceeding). We will not impose a burden on the State to produce evidence which may not be available or might not even exist. *Trinh v. State*, 974 S.W.2d 872 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

## B.    Analysis

At a hearing on the defense's requests for discovery, Mumphord's trial counsel requested the criminal record of all testifying witnesses. Mumphord's attorney explained that he thought the arrest records were relevant and necessary because "an alleged victim could have lied to the police previously about an alleged sexual allegation." The trial court held that the State was required to turn over evidence of convictions, but not arrests.[3] Mumphord argues the trial court abused its discretion by refusing to order the

---

[3] In making this decision, the judge stated, "I've always been under the understanding, at least for the 33 years I was a DA, that [defendants] weren't entitled to arrest[ records]." The trial judge further explained that because arrest records were likely inadmissible at trial, these records were not discoverable. However, an item of evidence is not exempted from the requirements of *Brady* simply because it may be later inadmissible at trial. *See Spence v. Johnson*, 80 F.3d 989, 1005 n.14 (5th Cir. 1996) ("We agree that the district court erred in concluding the undisclosed police reports were not material because they would not have been admissible at Spence's trial. The Fifth Circuit has held that inadmissible evidence may be material under *Brady*." (citing *Sellers v. Estelle*, 651 F.2d 1074, 1077 n.6 (5th Cir. 1981)).

State to disclose "juvenile arrest records."[4]

Mumphord asserts, without any citation to the record, that these records were "in the possession of the State." *See* TEX. R. APP. P. 38.1 (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) (discussing the probative value of conclusory statements). In *Taylor v. State*, the First Court of Appeals held that "[t]he denial of this type of request is never error if the defendant has not shown that the State possessed the records (showing that its witnesses had prior criminal records) or had ready access to the records." 755 S.W.2d 548, 551 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). Just as in *Taylor*, in this case,

> [t]he record does not reflect that appellant made *any* attempt to obtain records from the juvenile court system . . . , nor does the record reflect an attempt by appellant to determine if any records existed, nor does the record reflect an attempt to ascertain if the State had possession of any such records. Appellant did not even ask the complainant[s] on cross-examination whether [they] had a criminal record.

*Id.*; *see also Gallegos v. State*, No. 08-07-00104-CV, 2009 WL 2623356, at *10 (Tex. App.—El Paso Aug. 26, 2009, no pet.) (mem. op., not designated for publication) (applying *Taylor v. State*). We conclude that the record does not reflect that the State had possession of these records, and therefore, the trial court did not err in denying

---

[4] It should be noted that the term "arrest" has a connotation in juvenile law that is distinct from its ordinarily understood meaning as it relates to adults. *See* TEX. FAM. CODE ANN. § 52.01(b) ("The taking of a child into custody is not an arrest except for the purpose of determining the validity of taking him into custody or the validity of a search under the laws of this state or the United States."); *Vasquez v. State*, 739 S.W.2d 37, 43 (Tex. Crim. App. 1987) ("[W]e find that the Legislature has evinced its intent to distinguish the 'arrest' of juveniles from that of adult offenders as shown by [§ 52.01]."). Nonetheless, we understand Mumphord's complaint to specifically encompass the complaining witnesses' juvenile records that fall short of convictions.

Mumphord's request for discovery of juvenile criminal records. *See In re State*, 659 S.W.3d at 14. We overrule Mumphord's third issue.

## IV. BOND FORFEITURE

Mumphord argues that the trial court erred by denying his motion to set aside his bond forfeiture. But the issue concerning Mumphord's bond forfeiture has been rendered moot by his conviction. *See Ex parte Tucker*, 3 S.W.3d 576, 576 (Tex. Crim. App. 1999) (per curiam); *see also Lopez v. State*, No. 13-22-00171-CR, 2023 WL 4355392, at *7 (Tex. App.—Corpus Christi–Edinburg July 6, 2023, pet. filed) ("Because appellant has been convicted of the underlying offense and is no longer subject to pretrial confinement . . . . [t]here is no action this Court can now make regarding the trial court's decision on the amount of the bail that will cause any effect."). We therefore overrule this issue.

## V. MOTION TO SEVER

By his final two issues, Mumphord argues the trial court abused its discretion by denying his motion to sever.

### A. Standard of Review & Applicable Law

"Whenever two or more offenses have been consolidated or joined for trial under [§] 3.02, the defendant shall have a right to a severance of the offenses." TEX. PENAL CODE ANN. § 3.04(a). However, the right to severance does not apply to certain offenses listed in § 3.03(b) and (c) of the penal code. *Id.* § 3.04(c). For those offenses, the trial court has discretion to sever the cases only if "the court determines that the defendant or the state would be unfairly prejudiced by a joinder of offenses. *Id.*

23

"A trial judge's failure to grant a mandatory severance under [§] 3.04 is subject to a harm analysis, and the error is harmless if it did not adversely affect the defendant's substantial rights." *Scott v. State*, 235 S.W.3d 255, 257 (Tex. Crim. App. 2007); *see* TEX. R. APP. P. 44.2. "Neither the defendant nor the State bears the burden of demonstrating harm; instead, we assess harm after reviewing the entirety of the record, including the evidence, jury charge, closing arguments, voir dire, and any other relevant information." *Werner v. State*, 412 S.W.3d 542, 547 (Tex. Crim. App. 2013). "[T]he overlap of evidence is the most important factor" to consider when evaluating harm in this context. *Id.* at 549. "When there is no overlap of evidence between the two charges, . . . the failure to sever is most likely to be harmful." *Id.* at 548. However, "[w]hen there is a substantial overlap of evidence between the two charges, . . . the failure to sever is most likely to be harmless." *Id.* at 548–49.

## B.   Analysis

### 1.   Improper Relationship Charges

An improper relationship between an educator and a student is not one of the offenses listed in § 3.03(b) or (c); therefore, we must conclude the trial court erred by failing to sever the improper relationship offenses from the other charged offenses. *See* TEX. PENAL CODE ANN. § 3.04; *Scott*, 235 S.W.3d at 258. We analyze the record for harm.

Mumphord was initially charged with seven counts of improper relationship with a student; the State abandoned one of the counts at the close of testimony.[5] The complainants for the remaining six counts were also named as complainants in the

---

[5] The complainant named in the abandoned improper relationship count did not testify.

24

indecency with a child charges, and four of these complainants were also associated with online solicitation of a minor charges. To prove that Mumphord had an improper relationship with his students, the State was required to show that: (1) he was an employee of a public or private primary or secondary school; and (2) he "engage[d] in sexual contact, sexual intercourse, or deviate sexual intercourse with a person who is enrolled in a public or private primary or secondary school at which the employee works." TEX. PENAL CODE ANN. § 21.12. Sexual contact, as defined by the statute, includes "any touching by an employee of a public or private primary or secondary school of the anus, breast, or any part of the genitals of" a student when "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.12(e).

Several of the elements of improper relationship with a student overlap with the elements of indecency with a child. *Compare id.*, *with id.* § 21.11(a), (c). In fact, once the State met its burden to show that Mumphord committed indecency with a child with respect to each complainant, the only additional elements the State was required to prove to meet its burden with respect to the improper relationship charges were that Mumphord was employed by a public or private primary or secondary school and that the sexual contact involved a person enrolled at the school in which Mumphord worked. *See id.* § 21.12.

The evidence showed that Mumphord was a coach at St. Joseph's High School in Victoria, Texas. Although he had no additional licensure, Mumphord would "stretch" certain student athletes in the same manner as a sports therapist. However, several young men testified that Mumphord would incorporate sexual contact into these stretching

25

sessions. Most of the touching occurred on campus in an office Mumphord shared with a co-worker. Other touching occurred on a school bus after a school-sponsored event. All of the complainants testified that they were students at St. Joseph's High School when the touching occurred and that they were familiar with Mumphord through his employment at their school.

Because of the manner in which the offenses were committed, it is difficult to imagine that Mumphord's employment at St. Joseph's High School and the young men's status as students of St. Joseph's High School would not have come to light, even if the charges had been severed. Overall, the evidence supporting the improper relationship charges overwhelmingly overlapped with the evidence supporting the other charges. Because "the overlap of evidence is the most important factor" to consider when determining harm, we conclude that no harm occurred due to the trial's refusal to sever the improper relationship charges from the remaining charges. *See Werner*, 412 S.W.3d at 549.

### 2. Remaining Charges

Mumphord argues that he was also entitled to have the remaining charges, indecency with a child and online solicitation of a minor, severed "so that each case involved one victim." Both of these offenses are listed in penal code § 3.03(b); therefore, Mumphord was entitled to severance of these counts only if he showed that he would be unfairly prejudiced by their joinder. TEX. PENAL CODE ANN. § 3.04(c). Mumphord contends he was unfairly prejudiced both by the sheer volume of indicted offenses and because three of the counts were ultimately dismissed by the State, and this "[e]vidence of

26

extraneous offenses is . . . inherently prejudicial and carries the additional danger of forcing a criminal defendant to defend himself against an implied charge of having a propensity to commit crimes rather than the specific charge the State has brought against him."

"[T]here is no presumption that the joinder of cases with different child victims is unfairly prejudicial, *see Matthews v. State*, 152 S.W.3d 723, 730–31 (Tex. App.—Tyler 2004, no pet.), and the defendant bears the burden of showing how he would be unfairly prejudiced through consolidation, *see Lane v. State*, 174 S.W.3d 376, 380 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd)." *Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.). Mumphord "does not explain how his trial strategy would have been different; how voir dire was affected; or how his defense would have been different" had the causes been severed. *Lara v. State*, 513 S.W.3d 135, 145 (Tex. App.—Houston [14th Dist.] 2016, no pet.). We note that the legislature has explicitly permitted the admission of other sexual offenses committed by the defendant against children "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). In other words, even if each count was severed "so that each case involved one victim," it is likely that the testimony of all the complaining witnesses who were under seventeen when the offenses occurred would be admissible at every single trial. *See id.*

Regarding the three counts the State dismissed, "all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811

27

(Tex. Crim. App. 2013). We note that two of the counts that were dismissed by the State were similar in nature to the retained counts (i.e., Mumphord initiated sexual contact with the male complainants during a "massage" or "stretching" session that occurred when they were students at St. Joseph's High School). However, those two complainants either explicitly testified or implied that they were at the age of majority when the sexual contact occurred.[6] Although this testimony would not be admissible under article 38.37, § 2(b) as the complaining witnesses were likely seventeen or older when the sexual contact occurred, it is nonetheless possible that the evidence would be admissible under rule 404 to prove Mumphord's "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). Specifically, part of Mumphord's defense was that he did not have the requisite intent when he touched the young men. Indeed, in closing argument, Mumphord's counsel stated, "So it is [Mumphord's] intent, . . . I would agree with the State that this is really what this all boils down to." Therefore, evidence of other indecent assaults would likely have been admissible to rebut this defensive theory even if the cases had been severed. *See id.*

Accordingly, even if the district court had granted the motion to sever, it is likely that all of the evidence relating to the other complaining witnesses would have been introduced at the separate trials under either rule 404 or article 38.37. Therefore, we conclude that Mumphord has failed to meet his burden to establish that he was unfairly prejudiced by the joinder of the remaining causes. *See Hodge*, 500 S.W.3d at 624.

---

[6] For the third count that was abandoned, the complainant did not testify. Mumphord does not provide any explanation as to how he was prejudiced by the trial court's failure to sever this count. *See Hodge v. State*, 500 S.W.3d 612, 621 (Tex. App.—Austin 2016, no pet.).

## VI.    CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
19th day of October, 2023.